## SAMUEL C. WRIGHT, APPELLANT, *v.* JOHN CRADLE-BAUGH, RESPONDENT.

Where an assessment is made of the value of a town lot, it implies the total value, and not the mere value of a possessory claim.

Where other language is used in the tabular forms furnished to the assessors, indicating that only the possessory right is valued, the language first used may be qualified by this latter phrase; but in the absence of qualifying language, the value with a fee simple title will be understood.

Where the fee in United States land is assessed for taxes, the assessment is utterly void.

Two contiguous lots owned by the same individual may be jointly assessed, and only one valuation fixed for the two lots.

."Due process of law" requires that a party shall be properly brought into Court, and when there, shall have a right to set up any lawful defense to any proceeding against him. The Legislature, under pretense of regulating pleading cannot deprive a party of substantial rights.

There was no necessity for describing these lots by metes and bounds, nor of giving the number of acres, for several reasons. First: Carson is called a city, in the Constitution, the statute laws of the State and by common consent. It may therefore be held a city under the provisions of the revenue in regard to city lots. Second: to describe a lot by its number of lot and block in a regularly laid out town, (whether a city or not) is describing it by its common designation or name.

A tax deed which purports to convey the entire fee of the United States land, unaccompanied with any proof that any one ever had a possessory claim on the land, could convey nothing, and was therefore properly rejected by the Court below.

Counsel have the privilege of choosing the order in which they will introduce their proofs. But if documentary evidence is offered, which can only become relevant by the introduction of other connecting proofs, the Court may well refuse to receive such evidence until counsel will at least assert that they expect to introduce the connecting evidence.

One having a Government title may set it up against one claiming under a tax sale made previous to the time when Government parted with its title, notwithstanding any statutory provisions as to the effect of tax sales.

Per JOHNSON, J.—The Assessor used apt and appropriate language to describe the property assessed. The description does not necessarily imply that the fee simple title was assessed. The Assessor is not bound to ascertain the title by which a party holds lands. There was no defect in the assessment so far as the title to the land is concerned.

The law requires each city lot to be assessed separately, and a joint assessment of one lot and a fraction is void. This interpretation of the law is strengthened by the fact that it was so interpreted by the highest Court of California before we copied it from the statutes into our laws. A tax sale in pursuance of such assessment is void.

The Act of the Legislature declaring that "the deed derived from the sale of real property" shall be "conclusive in evidence of title," is of doubtful validity; but even if binding, it cannot be held to mean more than that the recitals of the deed shall be conclusive: not to be contradicted by other evidence. If the deed shows on its face that the assessment was illegal and void, it can convey no title.

UPON REHEARING.—Taxing or assessing a piece of property in general terms is taxing or assessing its whole value, and not the value of a particular interest or estate carved out of the whole.

When the title of real estate has passed from the Government, the Assessor only has to ascertain the total value, and the whole land is bound for the tax. If the estate is divided among several, the interest of each may be assessed separately, or the entire interest may be assessed in gross. But if the title is in

the Government, the only thing liable to assessment is the possessory right—in other words, the value of the land less the price to be paid the Government. An assessment of the gross value of Government land makes it absolutely void. The second column in the Assessor's table should distinctly state when only the possessory claim is assessed. But where that fails to make the proper statement, possibly the proper entry in the seventh column might correct the omission in the second.

*R. M. Clarke* and *Samuel C. Denson*, for Appellant.

*Geo. A. Nourse*, for Respondent.

The question here is, who had the right of possession to the lots in controversy, when the town site was entered?

None but an actual occupant, or one deriving his title from an occupant, could lay claim to these lots. What acts are necessary to constitute an occupancy, must be determined by the settled adjudication of the State.

The occupancy of the lot by Cradlebaugh in 1865, and his continued possession for some time, even up to the time of entry by the trustee, is clearly proved.

This being a *prima facie* case, can only be overcome by proof of some prior occupancy, or proof that he occupied in subordination to some other person. Does the rejected testimony tend to prove anything of the kind?

Appellant only offered in evidence a tax assessment of this property to J. C. Lewis, a return of delinquent tax, a suit thereon, a judgment for the State, execution sale, and tax deed. This evidence was objected to on three grounds; but if inadmissible on any grounds, this Court will not reverse the judgment on account of its exclusion. (*Ludlow's Heirs* v. *Park*, 4 Ham. Ohio Rep. 39; G. & W. on New Trials, Vol. 1, 256; 2 Ib. 673.)

The tax deed introduced could have availed nothing, for it is admitted by both sides that the *fee* of the land was in the United States long after the taxation and sale of the lots. This title is by law exempt from taxes, and therefore a sale of the same would be void.

There could be nothing taxable but a possessory title, and there is no presumption of law that such possessory title ever existed.

The presumption of law is, that it was United States land. (See

Laws of 1864–5, 344, Sec. 7.)   Until a possessory title was shown to exist, what good would a tax deed do ?   Appellant made no offer to connect his deed with an existing possessory right.   (*Comstock* v. *Smith*, 23 Maine, 202 ; *Bohr* v. *Steamboat Baton Rouge*, 7 Smedes & Marshall, 715 ; *Allen* v. *Blunt*, 2 W. & M. Rep. 121 ; *Crease* v. *Barrett*, 16 M. & R. 919, cited in G. & W. on New Trials, Vol. 2, 672–3–4.)

"Where evidence has been improperly rejected the Court will grant a new trial, *unless with the addition of the rejected evidence a verdict given for the party offering it would be clearly and manifestly against the weight of evidence.*"

If this evidence were admitted, even then, would not a verdict in Wright's favor be "clearly and manifestly against the weight of evidence ?"

Certainly the tax proceeding against John C. Lewis could pass no greater title than a *deed* from John C. Lewis.   What would a deed from him be worth, until it be shown that he had a title to convey ?

A tax deed could amount to nothing until it was shown Lewis had a title to pass by that deed.

The assessment was void on its face, because it purports to tax the fee.   (*Hale & Norcross Co.* v. *Storey County*, 1 Nev. 109 ; *Hall* v. *Dowling*, 18 Cal. 619 ; *People* v. *Morrison*, 22 Ib. 79.)

The assessment is void, because two several pieces of land are valued in one gross assessment.   (*Terrill* v. *Groves*, 18 Cal. 151 ; *Shimmin* v. *Inman*, 26 Maine, 228 ; *Whitman* v. *Thomas*, 23 N. Y. 281.)

A tax title is only conclusive against parties to the action or their privies.   Neither the State nor National Constitution will allow Cradlebaugh to be deprived of his property by a proceeding against Lewis.

He can only be deprived of his property by due process of law. (U. States Const., Article XI of Amendments ; Const. of Nevada, Art. I, Sec. 8.)

The Appeal must be dismissed, because the evidence does not appear in the record, which is required in this class of cases. (Laws of 1867, Sec. 5.)

Wright *v.* Cradlebaugh.

Opinion by BEATTY, C. J., LEWIS, J., concurring, and JOHNSON, J., concurring specially.

This was a proceeding under the provisions of an Act approved January 31st, 1866, " prescribing rules and regulations for the execution of the trust arising under the Act of Congress, entitled ' An Act for the relief of citizens of towns upon lands of the United States under certain circumstances,' approved May 24th, 1844."

Each party filed a claim for the same piece of property, and demanded a deed therefor from the District Judge of the Second Judicial District. The case came on for trial before the District Court of the Second Judicial District, Ormsby County, the Hon. C. N. HARRIS, Judge of the Third Judicial District, presiding.

When the appellant undertook to prove his case, he first introduced the delinquent list of Ormsby County, and offered in evidence the following portion thereof:

| Taxpayers' Names. | Description of Property. | No. of Lot. | No. of Block. | Section. | Real Estate, No. of Acres. | Possessory Claim, No. of Acres. | Value Real Estate or Possessory Claim, and improvements thereon. |
|---|---|---|---|---|---|---|---|
| J. C. Lewis. | Lot 1, and E. 20 feet; Lot 2, and improvements, S. T. & S. Division, C. C.. | 1 & 2 | 17 | .... | .... | .... | $600 00 |

The other claimant, John Cradlebaugh, objected to this evidence on the following grounds :

1. " That it appeared from said assessment that separate, several and distinct lots or parcels of land were assessed together and not separately valued.

2. " That from said assessment and valuation it appeared that the absolute or Government title to said land was assessed for taxation, and not the ' possessory claim.' "

The Court sustained this objection and Wright excepted. It is proper to remark that, in connection with the offer of this part of

23

the delinquent list of Ormsby County in evidence by Wright, Cradle-baugh admitted " that all the proceedings in the action in which the judgment was rendered, upon which the deed hereinafter set forth is based, were legal and sufficient as between the parties thereto."

The Court, after argument, rejected the delinquent assessment list, or the extract therefrom, and of this the appellant complains in this Court.

Whether, under our statute, it is necessary to introduce the delinquent assessment list and the judgment rendered for delinquent taxes, as a preliminary to the introduction of a tax deed, it is not perhaps necessary in this case to decide.    But assuming that they must be so introduced, let us examine the objections to the introduction of this delinquent list.

In the first place, it is admitted by the petitions of each of the parties filed in this case, that the land in controversy was United States Government land up to the seventh day of September, 1866, and as such it was absolutely free from all State taxation, and any proceeding taken on the part of the State Government to subject it to taxation must be held utterly void.    But the Government has adopted the policy of throwing open her lands to settlement and occupation by her citizens generally, and has recognized the right of all such settlers to purchase the Government title under prescribed rules.    Now although the Government title may be free from taxation, it by no means follows that the possessory right of the occupant is also free.    Indeed, it has been repeatedly held in this and neighboring States that such possessory rights are subject to taxation.    (See *Hale & Norcross Gold and Silver Mining Co.* v. *Storey County,* 1 Nevada, 104.)

In some cases the Government policy has been to discourage and prohibit transfers of possessory claims, and always to grant the land to the original occupants regardless of any forced sales of the occupants' rights.    But we are not prepared to say such has been the policy of the Government in regard to town site property.    Possibly a tax sale of the possessory right of a party to a town lot, and a deed regularly made under such sale, might confer on the purchaser the right of possession, and entitle him to  a deed from the

trustee. But however that may be, in this case the assessment is not of a possessory right. The assessment is of one town lot and the fraction of another. This assessment implies that it was the entire or fee simple title, and not merely the possessory title, which was assessed. The tabular headings used in this case are those prescribed by the statute. In one line it reads " Real Estate, No. of Acres;" in another, " Possessory Claim, No. of Acres." These headings, in view of other portions of the statute, seem to have been badly selected, for " real estate" includes " possessory claims," according to the definitions of the statute. Here, however, they were used to express two separate and distinct classes of property. Real estate in this place undoubtedly is intended for fee simple title, in contradistinction from the mere possessory title described in the other column. Had, then, the number of acres, or fractions of an acre contained in these two lots been entered in the appropriate column, say under the head " Possessory Claim, No. of Acres," this might have been sufficient to show that only the possessory claim was assessed. But nothing of the kind appears. We must then give to the words used by the Assessor their natural import, and hold that he made an assessment of the whole estate in the land, and the fee being admitted to be in the United States, the assessment must be held void.

It would certainly always be safe for the Assessor in assessing possessory claims to describe them as such in the second column of the tabular form prescribed by statute.

We think for the foregoing reasons the Court did not err in rejecting this testimony.

It may not be out of place to notice some other objections raised to this delinquent list. It appears that one lot and a fraction were assessed in one common assessment, and a joint valuation made of both. The whole lot is only described by its number and block, the fraction as so many feet of the east side of another lot.

Two. objections are raised to this mode of assessment. First, the lot and fraction should not have been assessed jointly. Second, these lots not being in a city or incorporated town should have the boundary described, and the number of acres or fractions of an acre should have been mentioned. The requirements of the statute

in this respect are as follows : " Described by metes and bounds or by common designation or names ; if situated within the limits of any city or incorporated town, described by lots or fractions of lots ; if without said limits, giving the number of acres as near as can be conveniently ascertained, and the location and township where situated."

We see nothing in this which in direct language prohibits the joint assessment of two contiguous lots to the same person.   We see no possible objection to such assessment.   If both lots belong to the same party, he is bound to the State for the entire tax, and has no right to complain that he cannot pay the tax on one without paying the tax on both.   If the same party owns both lots, any property of which he may be possessed, real or personal, is bound for the whole tax.   He cannot be injured by the failure to make a separate assessment.   If two lots are assessed jointly, and one belongs to A and the other to B, we can see that a difficulty might arise about the payment of taxes.   A might wish to pay on his, but not on B's lot.   They might not necessarily be of the same value, and the receiver of taxes would have no right to assess the value of each.   But the very same difficulty would arise if a single lot were assessed to A and half of the lot belonged to B.   The two halves would not necessarily be of the same value.   The receiver of taxes has no right to establish the value or amount of taxes on any piece of property.   The law seems to have made no provision for a case of this kind.   If A were sued for the entire tax on a lot, and should set up in defense that he only owned one half of the lot, a question might arise whether the Court could apportion the tax and give judgment for his equitable portion, or whether it would be a good defense to the entire action.   But it is surely true that the defense would be just as available in a case where A owned only one half of a lot, as in a case where two contiguous lots were taxed to him and he only owned one of them.

We are aware that in coming to the conclusion that two lots may be lawfully assessed in one joint assessment, we are disregarding and overruling some respectable authorities.   (See *Terrill* v. *Grove*, 18 Cal. 151 ; and *Shimmin* v. *Inman*, 26 Maine, 228.)   But both these authorities go on the ground of the great inconvenience that

might arise to a party from having his lot assessed jointly with some other person's lot.   The same inconvenience, as we have shown, would arise if the half of one man's lot was assessed with the half of another's lot.   If every method of assessment is to be held void which in certain supposed cases might produce inconvenience or injustice, it would probably be impossible to adopt any method by which assessments could be made valid, or by which the payment of taxes could be enforced.   When we suggested that a party to whom a lot was assessed might set up, by way of defense to the tax suit, that he only owned one half thereof, we did not overlook the fact that such a defense is not included within either of the five answers which Section 32 of the Revenue Act of 1864–5 says may be made by a defendant in a tax suit.

We apprehend it is beyond the power of the Legislature to restrain a defendant in any suit from setting up a good defense to an action against him.   The Legislature could not directly take the property of A to pay the taxes of B.   Neither can it indirectly do so by depriving A of setting up in his answer that his separate property has been jointly assessed with that of B, and asserting his right to pay his own taxes without being incumbered with those of B.

Section 8 of the first Article of the Constitution declares that " No person shall   *     *     *   nor be deprived of life, liberty or property without due process of law."

" Due process of law" not only requires that a party shall be properly brought into Court, but that he shall have the opportunity when in Court to establish any fact which, according to the usages of the common law or the provisions of the Constitution, would be a protection to himself or property.   The Legislature may regulate the mode of pleading and conducting a trial, but under pretense of doing so it cannot deprive parties of substantial rights.   (See *Taylor* v. *Porter & Ford*, 4 Hill, 140.)

With regard to the other objection, that the boundaries or number of acres is not given, we think there is nothing in that, for several reasons.   In the first place, we think Carson is a city.   It may not be incorporated, but that we think does not prevent its being a city.   On all the maps of the country it is marked as a city ; it is generally known as a city ; it is called a city in that

clause of the Constitution which adopts it as the seat of Government, and in several legislative acts it is called a city. We know of no reason why we should say it is not a city. If we go to the books for a definition of a city, we scarcely find any two of them agreeing on what is a city. We are content to call that a city which is so called by the Constitution and statutory laws of the State. Even if Carson were not a city, it is a place laid off into squares and lots. When you describe a lot by the number of the lot and the number of the block in which it is situated, that is describing it " by common designation or name." That portion of the direction which requires the number of acres to be given, we think was hardly intended to apply to lots containing only a small fraction of an acre. Possibly it might be safer for the Assessor in such case to say " a fraction of an acre," under the proper head. This would prevent all cavil.

The tax deed was afterwards offered in evidence by Wright, and objected to on the same grounds as the delinquent assessment list, and also, among other grounds, that " no evidence was offered in the case showing or tending to show that the lot and fraction of lot in question, or either of them, was claimed or occupied by any person at the time of the assessment or valuation thereof, or of the levy of the tax under which the sale mentioned in said deed purports to have been made ; nor that John C. Lewis, in said assessment and deed mentioned, ever had any title or claim to said real estate, or any portion thereof." The deed itself recites that the land or property therein described (not a mere possessory right thereto) was sold for taxes, and purports to grant a title thereto. There is no proof or offer to prove that any person ever had a possessory right thereto at or before the time of the levy of the tax. Both parties admit that at that very time the title was in the Government. Under all these circumstances, we think the Court below was right in holding that the deed proved nothing for Wright, and in rejecting it.

It is claimed by appellant that the deed itself was at least good testimony as far as it went ; that he should have been allowed to introduce his evidence in whatever order he chose ; that he might subsequently have shown that Lewis did have a possessory right and

that Cradlebaugh held under Lewis, or any other facts that would have aided the deed.

It is true that a party may usually choose for himself as to the order in which he will introduce his testimony. But if counsel offers a paper in evidence which may or may not be pertinent to the issue, depending for its relevancy upon its being in some way connected with something else, the Court may well ask the counsel if he expects to make the connection which would make it relevant testimony.

If counsel answers in the affirmative, it would usually be proper to admit the writing, though there are some cases where the Court might with propriety require the connecting proof to be first made. But if the affirmative answer is not made, then the Court should reject the paper, for the time being at least.

Here the opposing counsel called attention to the total absence of all that proof which would be required to make the deed relevant to the issues in the case. There was no suggestion by the appellant (so far as the record shows) that such proof would be offered, and no subsequent attempt to introduce such connecting evidence. Under such circumstances it was not improper in the Court below to reject the deed.

Even had this evidence been offered, we do not see that it would have helped the appellant. There was still the stubborn fact apparent on the face of the deed that the land itself was taxed, and the deed purported to convey a fee simple title to this land. The appellant only claims the benefit of this proceeding on the hypothesis that it was United States land when the tax was assessed. If so, we think that a deed based upon a supposed taxation and sale of that which was neither subject to taxation nor sale by State authority must have been held void, whatever other proof may have been connected therewith. That clause of the Revenue Law which declares that a tax deed shall be " conclusive evidence of the title," except against frauds, etc., is certainly very sweeping, and no doubt was intended to cut off many defenses that it was anticipated might be made against those claiming under tax deeds. Whatever was the intention of the Legislature, there are certainly some defenses they could not cut off. If the Government lands cannot be taxed by the

State, (and no one contends that they can be under our State Constitution, to say nothing of the rights of the Government itself) then it is certain that one holding a Government title may set up and assert that title against any tax sale which took place whilst the title was in the Government.

The judgment of the Court below must be affirmed.

Opinion by JOHNSON, J.

The facts of this case and points submitted for our determination are fully stated in the foregoing opinion, and whilst I concur with my associates in the judgment they award, it will be seen that in some respects we differ as to the reasons therefor. The case arising in the District Court under the town site laws of this State, was brought into this Court not strictly in compliance with the acts governing appeals in such special proceedings, but at the instance of counsel representing each party, the appeal was permitted to be heard on an incomplete record, the bill of exceptions alone ; so that the only questions reserved for our decision are as to the rulings of the Court below in rejecting the delinquent assessment roll and tax deed as evidence on behalf of plaintiff. This brings us directly to consider material and important features of the Revenue Laws of the State, and in doing this, two prominent objects should not be lost sight of. These are : First, to preserve unimpaired the compact under which this State was admitted into the Union, wherein it was stipulated " that no taxes shall be imposed on lands or property therein belonging to the United States; " and second, to render effective, so far as consistent and proper, the tax laws of the State.

Our revenue laws in no respect contemplate the taxation of the Government title to the public domain, but on the contrary have expressly forbidden it. Yet the right to impose a tax on the possession of individual claimants to such lands is equally as distinctly asserted by these laws—a right so universally upheld by judicial authority at the present day as to have become an established and recognized principle of law. Observing the same order that these questions are discussed in the foregoing opinion, I will first consider the objection stated to the assessment roll, that " it appeared an absolute or Government title to such land as was assessed for

taxation and not the possessory claim." The argument on this point, and which is measurably sustained by the majority of the Court, attaches as I conceive too much importance to the form of tabular statement appended to Section 13 of the Act of 1864–5, page 278, which provides that it shall be substantially in that form; and not only is it true that " these headings are badly selected, for the reason that real estate includes possessory claims according to the definition of the statute," but furthermore, it is not warranted in the plain and precise verbiage used in Section 12 of the Act. This recognizes but two distinct classifications of property, and enumerates but six separate columns, with the headings appropriate to each, whereas the tabular form uses threefold this number. Observe the language of this section : " It shall be the duty of the Assessor to prepare a tax list or assessment roll,    *    *    *    * and in said book or books he shall set down in separate columns : First—the names, etc.   Second—all real estate including the ownership or claim to or possession of, or right of possession to, any land and improvements taxable to each inhabitant, firm, incorporated company or association, described by metes and bounds or by common designation or name ; if situated within the limits of any city or incorporated town described by lots or fractions of lots; if without said limits, giving the number of acres as near as can be conveniently ascertained, and the location and township where situated ; all improvements on public lands, describing as nearly as possible the location of said improvements ; provided, that when two or more parties claim by description the same land, it shall be assessed to each party making such claim, or giving such description, according to the estimated value of the claims of each.   Third—the cash value of real estate, including possessory claim to lands, and the improvements thereon.   Fourth—the cash value of all improvements on real estate, including possessory claims, where the same is assessed to a person other than the owner of said real estate. Fifth—the cash value of all personal property except improvements on real estate or public lands taxable to each.   Sixth—the total value of all property taxable to each," etc.   Now from this we perceive that the different matters embraced within the six subdivisions of the section must be entered under their corresponding head-

ings.   Within the second subdivision property such as this in ques-
tion is to be placed, and if Carson City, known to us as unincorpor-
ated, is a city, within the meaning of the Act, then the property
must be " described by lots or fractions of lots ;" but if not within
a *city*, such as contemplated by the Act, then, adopting the most
natural construction that can be given to such an awkardly framed
sentence, it must be " described by metes and bounds, or by com-
mon designation or name." In what essential particular, so far as
it concerns the point being considered, has the Assessor failed to
comply with these requisites ? In none that I can discover. The
name of the person to whom it was assessed is given under the first
heading. In the second column the description is embodied, by
words and letters which are understood to mean " lot number one,
and the east twenty feet of lot number two, in Sears, Thompson &
Sears' division of Carson City, and the improvements thereon ;"
with the further explanation contained in a succeeding column, that
" the property lies in block seventeen," and " the value thereof"
is fixed in the appropriate place. The description, it seems to me,
is amply sufficient in either aspect in which it is to be regarded,
whether within or without a *city*. It is equally immaterial if the
prescribed form of the assessment roll must be followed, as it seems
to me that in all essential respects its requirements have been
observed. The description of the property is given under the only
headings which could appropriately be used for property of this
kind, as the fifth, sixth and seventh colums of the form are most
obviously intended to be used in reference to the assessment of
lands not subdivided into the smaller parcels of lots and blocks.

But it is insisted that this is defective as an assessment of a mere
possessory claim or right, because nowhere within the descriptive
features of the assessment roll is it by express words limited to the
assessment of a possessory right or claim. Admit this to be tech-
nically true, *non constat* that the fee simple title is assessed. Cer-
tainly it is not shown by express words that the fee simple title is
assessed, therefore it can only be implied from such matters
as are embodied in the assessment roll. The mere fact that
the Assessor has assessed, by the most apt words of description
which could be chosen for the purpose, " a lot and a fraction of a

lot," does not necessarily import the assessment of a fee simple title thereto ; and this presumption, if authorized at all under any circumstances, is completely overthrown when we find, as in this case, that he follows it in giving the value by the further statement that the property so described as " a lot and the fraction of another lot" is " real estate or possessory claim and improvements,"· thus showing with all reasonable certainty and precision that he assessed merely the possessory right, and not the fee simple title.    The circumstance that " real estate" occurs in connection with " possessory claim" is of no moment, for we have seen that the Revenue Act for such purpose declares the term " real estate" to include a " possessory claim," and therefore no more extended meaning should be given to the term than the Act gives to it.    But apart from all this, does the Act in question require of the Assessor to pass upon the different degrees of title—to determine whether it is possessory only or a fee simple· title ?    It seems to me that it does not.    It is made the duty of this officer to describe the property, and the Act points out the particular method to be observed in giving description to the two distinct classes of realty—as for instance, lands in a city or an incorporated town must be described by lots or fractions of lots ; but nowhere does it appear that he shall append a further description of the nature of the title so assessed.    Certainly, unless the Act does expressly direct that this be done, we can have no warrant for holding that it shall be done. With our knowledge of the general condition of the tenure by which lands are held in this State—some of them held by title from the Government, but by far the greater portion even of the lands in actual occupancy of individual claimants, being held in subordination to the paramount title—we can readily see how difficult it would be to secure in all cases a correct understanding of the state of title and the changing condition of these titles by reason of parties proving up their claims to the public lands; and the issuance of certificates and patents denoting the transfer to the individual owner but further complicates the question and enhances the difficulty in securing accurate information in reference to such titles ; and it would constantly be found quite impossible to ascertain the necessary facts so as to properly

discriminate between the possessory right and the higher degree of title. In all such cases the tax laws would be absolutely powerless as a means of enforcing the collection of revenue from such source. But whether this theory be correct or not is quite immaterial in the determination of questions involved in this appeal. To me it sufficiently appears that only the possessory right or claim of Lewis to the property in dispute was assessed; and so far as the ruling of the Court below rests upon the second point of objection made to the admission of the delinquent tax list as evidence, I conclude it was error. This brings us to the further point of objection to the same instrument—" that several and distinct lots or parcels of land were assessed together, and not separately." This point, I conceive, admits of but little argument. The wording of the statute has been quoted, and in my judgment it does not authorize a joint assessment of property of this description. Furthermore, I do not look upon this feature of the case as an open question. Our statute in this particular is an exact copy of the California Act, and years before the passage of our law the Supreme Court of California had held that such an assessment was void, in the case of *Terrill* v. *Groves*, 18 Cal. 149, under circumstances differing from this case in no respect calculated to weaken the force of the rule. In the California case the lots were assessed to one Green, were separately listed, but valued jointly, and the aggregate tax on all of them and of two other lots in other blocks set down. The lots sued for were contiguous to each other, and formed a part of block twenty-eight of the City of Stockton, and were put up and sold together. The plaintiff in ejectment claimed under a tax deed upon a sale founded on such assessment. The Court, after citing the statute, says: "We think the true meaning of the provision is to require a separate assessment and valuation of each lot in cases like this of city property." The Court also cites 26 Maine, 217, (evidently intending 228) and 9 Ohio, 43, as holding the same rule of construction, and concluding says: "We think such construction warranted by the language of our own Act."

This seems to have become the settled law in California, as I can find no later decision holding the contrary; and by a familiar rule

of construction, the adoption of the statute here brings with it the interpretation given it in the highest Court of that State ; especially when the rule so established is not repugnant to the law, but in complete accord with it.    Nor indeed can I discover wherein the cases cited place the decision on the ground of inconvenience, but in fact that the law so declares it.    In the California case the Court further says : " A great deal of confusion and injustice would grow out of a gross assessment of several lots."    In the case before us, although the lots are in the same block and of consecutive numbers, it does not necessarily follow that the lot and fraction of another lie contiguous to each other, nor have we anything before us showing such is a fact, as was the case in California.    If the rule is established that a lot or fraction of a lot may be assessed jointly, and the value given by the assessment aggregated, when owned by one person, then there can be no limit to the rule, and. equally valid would be an assessment of many lots or blocks in different portions of a town or city, if all owned by the same individual.    The only correct rule, as I conceive, is the one pronounced in the cases cited above.    I therefore conclude that the Court below properly rejected the delinquent assessment roll on the grounds stated in the first point of defendant's objection.

The only remaining question which I propose to consider at this time, is the ruling of the Court below, in also rejecting the tax deed as evidence for plaintiff.    The deed, so far as I can discover, is in the form required by the Act.    It recites the assessment, judgment, execution, levy and sale.    It shows that the assessment was made against the entire property, and not on the separate and distinct parcels.    In the view which I have taken of this question, it would follow that the sale being had in pursuance of an illegal and un-authorized manner of assessment, it conferred no right or title to the purchase.    But it is claimed on behalf of the plaintiff, the purchaser at the tax sale, that as by Section 36 of the Acts of 1864–5, p. 289, under which Acts this assessment and sale were made, " the deed derived from the sale of real property " being declared to be " conclusive evidence of the title," that although the assessment may not have been made in conformity with the law, yet the deed is conclusive in favor of plaintiff's title.    The power

of the Legislature to pass an Act of this sweeping character has been denied in repeated instances, whilst no authority is found in support of the proposition. But conceding that to this extent the Legislature may in its discretion prescribe such a strict and conclusive rule of evidence : can the effect of a deed executed under the Act be other than to afford conclusive evidence of the truth of the matters stated in such deed, and to absolutely forbid a contesting party the privilege of combating the statements contained in the deed by opposing proofs ? Such is my belief of the construction to be given this clause of the Act. The deed then being conclusive evidence of the recitals contained in it, are equally obligatory on the one party as on the other ; and if it shows a tax sale, made in pursuance of an illegal and unauthorized assessment, as in this instance, the purchaser can take nothing by his deed.

From this it follows that the deed was properly excluded.

Other questions growing out of the several propositions discussed by counsel in this case have been incidentally alluded to, but which I do not deem necessary to consider until such time as they necessarily arise in some proceeding. One of these questions is in reference to the time when the State may tax the fee simple title to lands—whether at the time of the payment to the land officers or not until after the issuance of a patent ; also, as to the effect of a tax of the possessory right of an individual claimant for taxes assessed and levied on such possessory right prior to the procurement of a patent from the Government. These are important questions, and demand proper consideration to be given to them before being passed upon.

For the reasons herein stated, I concur in the judgment of affirmation.

---

RESPONSE TO PETITION FOR REHEARING.

Opinion by BEATTY, C. J., LEWIS, J., concurring.

The petition for rehearing in this case presents no new points, and would not require any response from us but for the fact that the opinion of the majority of the Court seems to have been mis-

understood by counsel for appellant, and possibly may have also been misunderstood by others.   As this is a matter of public interest, and Assessors may hereafter be to some extent guided by this opinion, we will endeavor to make our views on the main points decided, so clear as not to be capable of misconstruction.

The first proposition the Court lays down is this : that taxing or assessing a piece of land in general terms, is taxing or assessing its whole value.   When we say that a piece of land is worth $1,000, we do not mean that a lease for one year, for ten years, or for life, in that property, is worth a thousand dollars, but that the entire fee simple title is worth that sum.   If we mean to express the value of any lesser estate, we say a lease for one year, for ten years or for life, in such a piece of land, is worth so much.   So when an Assessor describes property by metes and bounds, and says it is worth so many dollars, he means that the entire estate in that land is worth so much.   If the title has passed from the Government to an individual, all the Assessor usually has to do is to describe the land by metes and bounds and give its entire value.   The property then is liable for the entire tax, although several persons may be holding different estates therein.   For instance : A is in possession of a piece of land, having a lease for five years from B ; B has a lease for ten years from C ; C has an estate in fee simple ; the whole interest in the land is worth $1,000.   Undoubtedly the Assessor might assess the whole either to A, B or C, and other owners, known and unknown, and the assessment would be perfectly good—or he might assess A's interest at three hundred dollars, B's interest at two hundred dollars and C's interest at five hundred dollars, and it would be equally good.   But when the United States owns an interest in the land, the Assessor cannot make a general assessment of the value of the land ; for if he does, he is assessing that which is free from all State taxation, and the assessment is absolutely void on that account.   But if an individual has any preëmption or possessory right therein which is valuable, over and above the Government price of the land, that may be taxed.   But it must be shown distinctly that it is this possessory right and not the land itself which is taxed.

There is a great deal said in the petition for rehearing about

presumptions for and against the legality of assessments, and also as to whether certain columns in the Assessor's books are matters of necessity or only convenience, the applicability of which to this case we do not see. This case was not decided upon any presumptions, nor did we decide whether certain columns in the Assessor's book were necessary, or as contended, only convenient.

We held that the second column, which describes the property to be assessed, clearly described the land which was not subject to taxation. We further intimated that possibly this misdescription in the second column might have been corrected by a proper entry in the seventh column. But undoubtedly the proper description of the property to be taxed should have been given in the second column, and then the entry in the seventh would perhaps have been unnecessary. If necessary, it would only have been to show the number of acres in the claim, and not to show the character of the tenure.

Petition denied.

By JOHNSON, J.

The opinion heretofore given by me in this case sufficiently presents my views in respect to it at the present time. In that opinion, it will be remembered that I concurred in the judgment of affirmance, but for different reasons than those assigned by my associates. Entertaining these views, I am in favor of granting a rehearing, not for the purpose of affecting the ultimate character of the judgment, but solely for the purpose of enabling the majority of the Court to place their decision on what I conceive to be the correct basis on which it should rest.