SOUTHERN COTTON OIL COMPANY *v.* RAINES.

ATKINSON, J. It is provided in section 1 of the act of 1911 (Acts 1911, p. 172) that commercial fertilizers as therein described, which are sold or offered for sale in this State shall "have plainly marked or branded, by attaching a tag upon each sack or package thereof the sources and ingredients from which the available phosphoric acid, potash, and nitrogen respectively is generated and obtained." In section 2 of the act it is provided that if any such fertilizers or material shall prove deficient in any of its ingredients as "guaranteed or branded by attaching a tag or tags upon the sacks or packages containing the same," and if by reason

of such deficiency the "commercial value" of such fertilizers shall fall more than three per cent. below the guaranteed commercial value, the vendor "shall be liable in damages to the purchaser . . in a sum of twenty-five per cent. of the purchase-price, plus the shortage of such commercial fertilizer." In section 3 it is provided that any manufacturer, manipulator, dealer, or vendor of such fertilizers who publishes, by branding or by attaching a tag or tags upon the sacks or packages of fertilizers, "a false or incorrect analysis of the components and ingredients thereof shall be liable in law to any and every purchaser of such falsely and incorrectly branded or tagged fertilizer, in a sum of twenty-five per cent. of the purchase-price, plus the shortage of such commercial fertilizer." In section 4 it is declared that "a deficiency of more than ten per cent. below the guaranteed analysis of the fertilizers as published and branded or tagged on the sacks or packages thereof shall be held and declared by the courts of this State to constitute a false and incorrect publishing, branding, or tagging within the intent, purpose, and meaning of this act." A purchaser of commercial fertilizer brought suit against his vendor for damages (a) for alleged shortage of actual commercial value amounting to three per cent. less than the "guaranteed commercial value," and also for twenty-five per cent. of the purchase-price on account of such shortage; also for twenty-five per cent. of the purchase-price on account of publication of a false analysis of the fertilizer which was alleged to have fallen off more than ten per cent. in nitrogen indicated by the brand on the tags. In a general demurrer to the petition it was alleged that the action was brought under sections 2, 3, and 4 of the said act of the legislature, and that said sections were void as being repugnant to article 1, section 1, paragraph 2, of the constitution of the State, because they do not afford defendant impartial and complete protection; also as being repugnant to article 1, section 1, paragraph 3, of said constitution, because enforcement of said laws will deprive defendant of his property without due process of law; also as being repugnant to paragraph 1 of the 14th amendment to the Federal constitution, because enforcement of said laws will deprive defendant of his property without due process of law, and because it will deny defendant the equal protection of the laws. The demurrer was overruled. On the trial a verdict was directed for the plaintiff. The defendant excepted to the overruling of a motion for a new trial, and assigned error also on the overruling of the demurrer. The latter judgment was affirmed, but for other reasons there was a reversal of the judgment directing the verdict. *Southern Cotton Oil Co.* v. *Raines,* 167 *Ga.* 880 (147 S. E. 77). When the case came up for trial again, several terms after the appearance term, the defendant filed a general demurrer and a motion to dismiss the petition, and an amendment to the original answer, in each of which it was alleged that the above-mentioned sections of the act of 1911, and also § 1790 of the Civil Code of 1910, are violative of the State and Federal constitutions, for various reasons. Each of the foregoing pleadings were overruled, and after hearing evidence a verdict was again directed for the plaintiffs. The defendant's motion for a new trial was overruled. In a bill of exceptions error was assigned on the judgment refusing a new trial, and also on the preliminary rulings on the pleadings. *Held:*

1. The demurrer filed subsequently to the first term, and after decision of this court sustaining the judgment of the trial court overruling the demurrer filed at the first term, was properly overruled on the ground that it was not filed within the time provided by law. Civil Code §§ 5630, 5632: *Mayor &c. of Cartersville* v. *Maguire*, 84 *Ga.* 174 (10 S. E. 603). See also *Battle* v. *Warren County Fertilizer Co.*, 155 *Ga.* 650 (118 S. E. 362), and cit.; *Richmond & Danville R. Co.* v. *Mitchell*, 95 *Ga.* 78 (22 S. E. 124). The case differs from *Stovall* v. *Caverly*, 139 *Ga.* 243 (77 S. E. 29), in which the grounds of general demurrer were enlarged after the first term, but before decision of the questions raised by the demurrer.

2. The motion to dismiss in the nature of a general demurrer to the petition, filed at the stage of the case indicated in the preceding note, was founded on matter that did not appear on the face of the petition, and was properly overruled. Civil Code § 5629; *Bower* v. *Douglass*, 25 *Ga.* 714. See also *Brown* v. *Georgia, Carolina & Northern Railway Co.*, 119 *Ga.* 88 (46 S. E. 71); *O'Connor* v. *Brucker*, 117 *Ga.* 451 (43 S. E. 731).

3. The amendment to the answer filed at the stage of the case indicated in the preceding notes sought to raise questions as to constitutionality of sections 2, 3, and 4 of the act of 1911 (paragraphs (b), (c), and (d) of § 1778 of Park's Code), which had been ruled upon by the trial court adversely to the defendant. As to such rulings the judgment of the trial court had been affirmed by the Supreme Court.

(a) As to constitutionality of such sections of the act of 1911, the defendant was concluded, and in so far as related to them the judge did not err in striking the amendment.

(b) The constitutionality of section 1790 of the Civil Code was not brought in question in the former case. The amendment was supported by affidavit as authorized and provided in the Civil Code, §§ 5681, 5640. The former verdict had been set aside. In these circumstances the answer was amendable, and the lapse of time, and rendition of the verdict and decision of the case by the Supreme Court, was not sufficient ground for striking the entire amendment. Civil Code, §§ 5681, 5640.

(c) This ruling comports with the rulings in *Southern Mutual Insurance Co.* v. *Turnley*, 100 *Ga.* 296 (7) (27 S. E. 975); *Real Estate Bank & Trust Co.* v. *Baldwin Locomotive Works*, 145 *Ga.* 105 (88 S. E. 584); *Almand* v. *Thomas*, 148 *Ga.* 369 (96 S. E. 962).

(d) A defendant may in his answer raise the question as to the constitutionality of a statute that will materially affect his defense. 12 C. J. 784. The provision of the Civil Code, § 5632, that "all issues of law shall be raised by demurrer," is mandatory only as to demurrers which go to the form of a pleading which is otherwise good in substance. *Kelly* v. *Strouse*, 116 *Ga.* 872 (5) (43 S. E. 280).

(e) It was erroneous to strike the entire amendment to the defendant's answer on the grounds (1) that it seeks to raise an issue of law, which can only be raised by demurrer or special plea, and can not be raised in an answer; (2) that it seeks to raise a question of law which has already been determined on the original demurrer; (3) that it is filed too late, it appearing that the appearance term of said case has

already passed, and the said amended answer seeks only to raise a question of law.

4. It is provided in section 1790 of the Code of 1910, supra: "Should the analysis show that the fertilizer comes up to the guaranteed analysis upon which it is sold, then the statement so sent by the State chemist shall be conclusive evidence against a plea of partial or total failure of consideration. But should the analysis show that such fertilizer does not come up to the guaranteed analysis, then the sale shall be illegal, null and void; and when suit is brought upon any evidence of indebtedness given for such fertilizer, the statement of such State chemist so transmitted to the ordinary shall be conclusive evidence of the facts, whether such evidence of indebtedness is held by an innocent third party or not." This is a codification of section 6 of the act of 1890 (Acts 1890-91, vol. 1, p. 142); also of subsection 6 of section 15 of the act of 1901 (Acts 1901, p. 72). Though this statute was not attacked as unconstitutional on the former trial nor mentioned in the pleadings, yet, in dealing with exceptions to rejection from evidence of a private analysis of the fertilizers in question and testimony as to the correctness of the analysis offered by the defendant to show that the fertilizers were not deficient as alleged in the petition, this court ruled: "A private analysis would not be admissible where there is in evidence an official analysis as provided in the Civil Code (1910), §§ 1785-1790." *Southern Cotton Oil Co.* v. *Raines*, supra.

(a) The ruling above quoted became the law of the case, under application of Civil Code § 1790, in the absence of any attack upon its constitutionality. On the subsequent trial of the case the defendant would be authorized to question the constitutionality of that statute.

(b) In so far as the above-quoted § 1790 of the Civil Code of 1910 purports to make an official analysis of fertilizers by the State chemist conclusive evidence, it is an unauthorized invasion of the functions of the courts, and is void as violative of the due-process clauses of the State and Federal constitutions, because it is an unauthorized attempt to legislate the truth of facts upon which the rights of parties are made to depend in judicial investigations. *Dougherty* v. *Bethune*, 7 *Ga.* 90; *Jaques & Tinsley Co.* v. *Carstarphen Warehouse Co.*, 131 *Ga.* 1-15 (62 S. E. 82); *Taylor* v. Anderson, 40 Okla. 316 (137 Pac. 1183, 51 L. R. A. (N. S.) 731; Vega Steamship Co. v. Consolidated Elevator Co., 75 Minn. 308 (77 N. W. 973, 43 L. R. A. 843, 74 Am. St. R. 484); People v. Rose, 207 Ill. 352 (6) (69 N. E. 762); Wright v. Cradlebaugh, 3 Nev. 341; Western & Atlantic Railroad v. Henderson, 279 U. S. 639 (49 Sup. Ct. 445, 73 L. ed. 884), and cit.; Bailey v. Alabama, 219 U. S. 219 (31 Sup. Ct. 145, 55 L. ed. 191); McFarland v. American Sugar Co., 241 U. S. 79 (36 Sup. Ct. 498, 60 L. ed. 899).

5. An inspector of fertilizers "shall be provided with bottles of not less than eight (8) ounces capacity," in which to place samples of fertilizers and fertilizer materials drawn by him, and shall draw, with such an instrument as shall secure a core from the entire length of the package, a sample of fertilizer or fertilizer material from the entire length of the package. He shall carefully draw samples as follows: "In lots of ten packages or less, from every package; in lots of 10 to 100 packages,

from not less than 10 packages; in lots of 100 packages and over, from not less than 10 per cent. of the entire number; and after thoroughly mixing the samples so drawn, he shall, by the method known as 'quartering,' draw from such thoroughly mixed samples two subsamples, and with them fill two sample bottles, and shall plainly write on a label on said bottles the number of said sample, and shall also write on the label on one only of said bottles the name of the fertilizer, acid phosphate, or other fertilizer material, also the name of the manufacturers. He shall then seal both of said bottles, and shall forward to the commissioner of agriculture the said samples so drawn by him, stating the numbers of sacks from which the sample was drawn, and a full report of the inspection written on a form prescribed by the commissioner of agriculture, which report must be numbered to agree with the number of the bottle; and in said report shall be given the name of the fertilizer, or fertilizer material, the name of the manufacturer, the guaranteed analysis, the place where inspected, the date of inspection, and name of inspector; and it shall be the duty of said inspectors to keep a complete record of all inspections made by them on forms prescribed by the commissioner of agriculture." Park's Code, § 1781. An original and a certified copy of an inspector's report made under the foregoing statute was offered by the plaintiff, and was admitted in evidence over the objections that the samples were not taken in compliance with the law, because, as appeared from the testimony of the inspector, he did not know whether the report was correct as to the number of bags in the lot or the number inspected; and because it also appeared from his testimony that the samples were taken in paper bags and carried to the home of the inspector, where they were mixed and bottled at night; whereas the law requires the samples to be placed in bottles and that they be mixed and bottled at the place where taken.

(a) Where penalties are sought to be recovered, there must be a strict compliance with the statute. *Southern Cotton Oil Co.* v. *Raines*, supra. Under the admissions in the pleadings and uncontradicted evidence as to the number of packages, the inspector drew his samples from the requisite percentage of packages, and the fact that he did not know the total number of packages intended to be inspected did not render his report inadmissible in evidence.

(b) Strictly construed, the statute requires that the samples be placed *in bottles at the time they are drawn from the packages;* that after all are drawn they be thoroughly mixed and from the mixture "two subsamples" be drawn according to the method known as "quartering," and from this that "two sample bottles" be filled, and that those two bottles be marked and disposed of as further directed by the statute. The requirements of the statute are not satisfied by placing the samples as drawn in paper bags and carrying them to another place for final preparation as provided in the statute. On account of failure of the inspector to comply with the statute in this respect, the report was inadmissible as an official paper.

(c) The report was not offered under the provisions of the Civil Code, § 5873, as a memorandum to refresh the memory of the witness.

6. The certified copy of the analysis of the State chemist based on the in-

spector's report was inadmissible in evidence as an official analysis, due to the failure of the inspector to comply with the statute as pointed out in the preceding note. The ground of objection now urged to admissibility of the analysis by the State chemist was not made on the first trial and was not affected by the former decision of this court.

7. The inspector having testified on the trial that he had sampled a stated number of sacks of the fertilizer in question, being the number requisite to the percentage of sacks to be sampled, evidence tending to show statements of the inspector that he did not know the number he had sampled was admissible after laying the foundation for admission of contradictory statements.

8. The plaintiff's case being founded on alleged deficiency of ingredients in the fertilizer in question, admissions of the plaintff that he had an analysis of the fertilizer, and that "it run mighty good," were admissible.

(a) The analysis was also admissible in connection with the testimony of the witness that the plaintiff handed it to him at the time he made the admissions.

(b) It was not essential to show that the analysis was based on samples taken as provided by law.

9. In the suit for penalties under the provisions of sections 2, 3, and 4 of the act of 1911 (Acts 1911, p. 172), supra, on the question as to insufficiency of the ingredients to comply with the requirements of the statute, the parties would not be restricted to evidence of an official analysis by the State chemist, but might rely on any competent evidence tending to show the facts as to sufficiency or insufficiency of the ingredients of the fertilizer or fertilizer material. Testimony of an agent of the vendor, that he took samples from "about every fifth sack" of all the fertilizer in question and mixed the samples well and delivered them to the "office man" of the vendor, and other evidence that the office man forwarded the samples to the private chemist of the vendor and that such chemist analyzed the samples and furnished an analysis of the samples which showed that there was no deficiency in the ingredients, and that such analysis was true, was admissible over the objections that the samples were not taken as required by law, and that there was no evidence that the analysis was an official analysis.

10. The damages alleged in the petition were statutory and in the nature of penalties, without any provision in the statute for enlarging the damages recoverable by inclusion of interest. The verdict for the plaintiff was for the full amount alleged and a specified sum as interest. Interest was not recoverable.

(a) This ruling comports with the decision of this court in *Western & Atlantic Railroad Co.* v. *Brown*, 102 *Ga.* 13 (29 S. E. 130).

(b) A different ruling is not required by the provisions of the Civil Code, §§ 3434 and 4396.

11. The evidence tended to show that the plaintiff purchased and paid for all the fertilizer, but that he sold a portion of it to a third person. The fact of sale to such third person would not affect the right of the plaintiff to the statutory penalties or damages relatively to all the fertilizers he had purchased.

12. The trial judge erred in striking so much of the amendment to the defendant's answer as questioned the constitutionality of § 1790 of the Civil Code of 1910, and in overruling the defendant's motion for a new trial. *Judgment reversed. All the Justices concur.*

RUSSELL, C. J. I concur in the result, and construe the language used in the opinion to be in conformity to my view that a litigant may raise a question of unconstitutionality for the first time even in this court.

No. 7443. SEPTEMBER 13, 1930. REHEARING DENIED SEPTEMBER 29, 1930.

*W. H. Gurr, R. R. Marlin, Harold Hirsch,* and *John P. Stewart,* for plaintiff in error.