SOUTHERN RAILWAY COMPANY *et al. v.* WEHUNT.

No. 9385.  JULY 14, 1933.  REHEARING DENIED AUGUST 10, 1933.

*Morris & Morris, John T. Dorsey,* and *Maddox, Matthews & Owens,* for plaintiff in error.

*John S. Wood* and *Roberts & Vandiviere,* contra.

BECK, P. J.  Clarence Wehunt, by next friend, brought suit against Southern Railway Company and Tom Hawkins, seeking to recover judgment for damages because of an injury sustained when a train of the defendant company collided with an automobile operated by petitioner and in which he was traveling. Tom Hawkins, the other defendant, was an employee of the defendant company operating the engine at the time of the collision. Negligence of the company is alleged, and it is alleged that the collision of the engine with the automobile in which plaintiff was riding and

the consequent injury of the plaintiff was the result of the negligence of the railway company's employees. The defendant company filed its answer to the petition, admitting certain paragraphs and denying others. It denied the allegations of negligence with which it is charged in the petition; and alleged that if the plaintiff sustained the injuries described in the petition, this was the result of his own negligence and want of ordinary care. The defendant also filed an amendment to its answer, in which amendment it attacked the constitutionality of the act of the legislature under the provisions of which the suit was brought. This amendment was stricken upon demurrer, and to that ruling the defendant excepted pendente lite. The jury returned a verdict in favor of the plaintiff for the sum of $1500. The defendants made a motion for a new trial, which was overruled, and they excepted.

■ The statute which is attacked upon constitutional grounds was approved August 20, 1925 (Ga. L. 1925, p. 322), and is entitled, "An act to promote the public safety at railroad crossings; to provide for warning signs; to require the stopping of motor-vehicles approaching such crossing, and regulate their speed; to provide penalties; and for other purposes." This act, in section 1, makes it the duty of the county authorities in charge of roads in any county of the State to designate certain road crossings either as a safe crossing or unsafe crossing, and defines safe and unsafe crossings. Another section provides for county authorities notifying the railroad companies of the location and classification of the crossings. In another section the act provides that the railroad company shall, in certain cases, erect at the crossing certain described signs. And sections 4, 5, and 6 of said act are in the following language: (4) "that every person operating a motor-vehicle, on approaching a crossing so designated as an unsafe crossing, shall be and is hereby required to bring his vehicle to a full stop at a distance of not exceeding fifty feet from the nearest rail of the track and before he shall cross thereover, or attempt to do so." (5) "At all crossings designated as safe crossings the said railroad companies shall erect a sign similar to the sign required in section 3 of this act in size and shape, which shall have thereon the words 'R. R. Crossing—Slow Down to 6 Miles—Ga. Laws.' (6) "that it shall be the duty of every person operating a motor vehicle over a railroad crossing, so designated as a safe crossing, and marked with warning sign as

above, to slow down his said vehicle on approaching said crossing to a speed of not more than six miles per hour, and shall not cross over said railroad crossing, or attempt to do so, at a greater speed than six miles per hour. The offenses created herein shall not be considered as warrantable offenses, but prosecutions shall be by indictment or accusation." And section 8 reads as follows: "Be it further enacted, that a failure to observe this Act shall not be considered as an act of negligence per se in any action against the railroad company for injury to person or property; but the facts relating to any failure to observe the requirements hereof may be considered along with the other facts in the case in determining the questions of negligence, if any. Provided, nevertheless, that the rule of law in reference to presumptions against railroads shall not be affected by this act; and provided further, that in the trial of any civil case involving damages to person or property at or near any such crossing, it shall be unlawful for this act to be read to, or commented before, any jury empaneled to try any such civil case, nor shall the judge upon the trial of such civil case charge the provisions of this act; the true intent of this act being not to change the existing law in reference to civil cases for the recovery of damages on account of personal injuries or property damage at or near any railroad crossing. Provided, further, that the charging, reading, or discussing of this act within the hearing of a jury in the trial of a case arising from injuries sustained or suffered at or near a railroad crossing shall be and constitute reversible error."

The defendants, in the amendment to their answer, attacked the act set forth, above, upon numerous grounds. The amendment was allowed subject to demurrer. The plaintiff thereupon demurred to the amendment. The demurrer was sustained, and the amendment stricken; and the judgment sustaining the demurrer was excepted to upon various grounds, one of these being especially directed to the last proviso of section 8, just quoted. This portion of the act is attacked upon the ground, among others, that it is violative of the provisions of article 1, section 1, paragraph 23, of the constitution of this State (Civil Code, § 6379), which declares that "The legislative, judicial, and executive powers shall forever remain separate and distinct;" it being contended that the same constitutes an encroachment by the legislative branch of the State government upon the power of the judicial branch thereof, by taking from the

judicial branch the power to construe, administer, and give effect, in the usual and ordinary way, to the substantative law as declared in the act under consideration, and takes away the right to instruct the jury as to the provisions of said act or to comment thereon in any way; that is, takes away from the court a right and power inherent in the court, by declaring that the doing of the things therein specified "shall constitute reversible error."

An attack upon the constitutionality of a statute may be made in the pleadings in a case, by the plaintiff in his petition, or by the defendant in his answer; and the defendant in this case had the right, under the law, to raise the question of the constitutionality of the statute in question in an amendment. See *Southern Cotton Oil Co.* v. *Raines*, 171 *Ga.* 154, 156 (155 S. E. 484). In fact, this is a most appropriate way of raising the question of the constitutionality of a statute, when the applicability of the statute to any material issue in the case can be foreseen. But in this case we will not pass upon the question as to whether the court erred in sustaining the demurrer to the amendment; and we decline to pass upon that question, because if the part of section 8 under attack is unconstitutional, the entire statute is unconstitutional. It is true that the holding of one section of an act unconstitutional, where the act contains other substantial provisions, does not necessarily result in a holding that the entire act is void; yet if the unconstitutional part is such in character as to affect and limit or render non-applicable the other portions of the act, then the entire act becomes unconstitutional. And we can not say in the present case that the portion of the act which the plaintiff in error insists is unconstitutional is so separate, distinct, and disconnected from the other portions of the act as to permit them to stand after the provisions of section 8 are held to be void because unconstitutional; for we can not say that the legislature would have enacted the prior substantative sections of the statute independently of that part of it which the plaintiffs in error insist is unconstitutional and void. If the parts of the section under attack are not unconstitutional, then the court did not err in striking the amendment to the defendant's answer; but if those parts of the act under criticism are unconstitutional, still the plaintiffs in error, upon the trial of the case, were not entitled to the application of those parts of the statute favorable to them; for if the parts of the act which they insist are unconstitutional are

448

void, the entire act is also unconstitutional and void. Consequently the plaintiffs in error were not injured by the ruling of the court sustaining the demurrer to the amendment.

■ The motion for a new trial consists of the general grounds; and in an amendment to the motion there is a special assignment of error upon the refusal by the court of two requests to charge the jury. The first of these requested instructions is as follows: "If you find from the evidence that the crossing at which the collision referred to in this case occurred had been designated by the county commissioner of Cobb County as an 'unsafe crossing,' and that there had been erected at the approach to said crossing a white sign with red letters thereon, raised not less than ten feet from the ground and not less than thirty inches by forty inches in size, placed on the right-hand side of the approach to said crossing, and approximately one hundred feet from the rails of the railroad-track, which sign was lettered with the words 'Georgia Law—Stop—Unsafe R. R. Crossing,' and that said lettering was not less than nine inches in height, and you further find from the evidence that the plaintiff in this case did not stop his automobile at a point not exceeding fifty feet from the nearest rail of the track of the defendant railway company, and before he attempted to cross over the track, I charge you that the plaintiff, Clarence Wehunt, would be guilty of negligence per se." And the second requested charge is in the following language: "The General Assembly of Georgia has passed an act entitled 'An act to promote the public safety at railroad crossings; to provide for warning signs; to require the stopping of motor-vehicles approaching such crossing, and regulate their speed; to provide penalties; and for other purposes,' which was approved by the Governor on August 20, 1925, wherein it is provided, in substance, that at any grade crossing of a public road on the main line of a railroad-track, designated as an 'Unsafe Crossing,' there shall be erected on the right-hand side of the approach to said crossing, and approximately one hundred feet from the rails of the railroad-tracks, a sign of designated dimensions, etc., containing the words 'Georgia Law—Stop—Unsafe R. R. Crossing,' and that every person operating a motor-vehicle must come to a full stop at a distance not exceeding fifty feet from the nearest rail of the track, but further providing that a failure by the driver of a motor-vehicle to observe the requirements of the act shall not be

considered as an act of negligence per se in an action against the railroad company for injury to person or property, and that in a case involving damages to person or property at or near any such crossing it shall be unlawful for this act to be read to or commented upon before any jury empaneled to try any such civil case, and that the judge, upon the trial of such civil case, shall not charge the provisions of the act, I charge you that these last provisions of this act should be disregarded by you, for the reason that they are unconstitutional, null and void. Accordingly, I charge you that if the sign referred to in the act had been erected in accordance with the provisions thereof, and if the plaintiff, Clarence Wehunt, failed to bring his automobile to a full stop at a distance of not exceeding fifty feet from the nearest rail of the track before he attempted to pass over the crossing, that he would be guilty of negligence per se."

In view of our rulings stated above, it is not ground for the grant of a new trial that the court refused these requests to charge. For, if the act is unconstitutional, the court should not have given any charge based upon the act or any of its provisions. If the act is constitutional, then it is equally clear that the requests to charge should have been refused; because in the act itself is a provision prohibiting the giving of the act in charge.

■ Upon consideration of the evidence, we can not say that there is no evidence to support the verdict.

*Judgment affirmed. All the Justices concur.*