Kelsey *v.* Abbott.

KELSEY, Respondent, *v.* ABBOTT & EDWARDS and J. G. CLARK, Appellants.

Where a party made defendant in a foreclosure suit, as claiming some interest in the land, sets up, as a full defense, a tax title, he cannot object, afterward, that equity has no jurisdiction over tax titles.

An assessment for taxes must be made against *the owner*, when known. The *individual*, not the property, pays the tax. The property shows the amount of the tax with which to charge the owner, and is security for payment.

The assessment must be as certain, as to the person taxed, as it is to the amount of the tax, and to the property.

Proceedings on tax sales are *strictissimi juris*. *Ferris* v. *Coover*, (10 Cal. 632,) affirmed in this.

The fact that a tax deed is *prima facie* evidence of certain facts makes it none the less obligatory to comply strictly with the law. The deed simply shifts the burden of proof.

An assessment stating: "House and lot north side of Commercial Street, formerly owned by Belle Creole, also brick store north side of Commercial Street and second from the corner of Pine and Commercial, including lot and all the appurtenances, seven thousand dollars," there being at the top of the page containing this description the words, "Nevada County, Nevada Township, Nevada City," is fatally defective in omitting "to give the metes and bounds, or describing the premises by lots or fractions of lots," according to the 4th Section of the Revenue Act of 1857.

A party in possession of premises under Sheriff's sale, and receiving rents and profits during the time for redemption, should, in equity, as between him and defendant in execution, pay the taxes assessed while he is so in possession. If the owner does not pay them, then the statute requires the party in possession to pay.

If, in such case, such party fails to pay the tax, permits the premises to be sold, and buys them in, he can derive no benefit from the sale; except, that, in equity, the amount paid would probably be considered an advance to the judgment debtor. And this, though the premises were bid in by one of two partners, while the possession, under the Sheriff's sale, was by both partners. The duty to pay the tax was several, as well as joint.

Appeal from the Fourteenth District.

The facts sufficiently appear in the opinion. Plaintiff had judgment of foreclosure, and defendant, Clark, appeals.

*C. Wilson Hill*, for Abbott & Edwards, and *E. B. Mastick*, for Appellant, Clark.

1. Equity has no jurisdiction over tax titles. (2 Cal. 290—463.)

2. A mortgagor cannot make a person claiming title to the premises a party to the foreclosure suit for the purpose of trying the title. That is a contest between mortgagor and mortgagee alone. (2 Seld. 82; 4 Paige, 206; 2 Barb. 22, 23; 3 Id. 438.) By our statute, tax deeds are *prima facie*, if not conclusive, evidence of all the matters stated therein, and cannot be contested, except by one showing title in himself. (12 Ill. 409, 416.) And plaintiff does not claim title.

3. Is the title by purchase under tax sale adverse to morgtagor and mortgagee? The mortgagee holds his interest under the mortgagor. If the latter has no title, the former can acquire none. The mortgagor has possession and the right of redemption. The purchaser on foreclosure takes subject to this right. The legal title remains in the mortgagor until a deed is made, and a purchaser of the mortgagor's interest at a tax sale acquires also the interest of all persons claiming through, or under, his title.

4. The power of taxation is one of sovereignty, and the lien of the sovereign for taxes, unless specially granted by the sovereign, takes precedence of all other liens, whether these liens be subsequent or prior in point of time; whether they are mortgages or judgments. (15 Ill. 7, 477; 2 Bay, 244; 2 Cow. 118.) In Hilliard on Mortgages, the rule is laid down that the mortgagee must pay taxes on mortgaged promises, if the mortgagor fails so to do. (1 Hill. on Mort. 305 n.)

The rule is that the State looks primarily to the property for the payment of taxes, and not to the owners of the property. The lien of the State, by virtue of its sovereignty, attaches upon the thing, and not upon the person, and this lien takes precedence of all others, *ex necessitate rei*—the mere looking to the person would avoid the payment of the taxes due to the State.

*McConnell & Niles* and *J. Anderson,* for Respondent.

I. The principal position urged to sustain this appeal, we understand to be substantially this, viz : A sale for taxes by the State, passes a title to the property sold, discharged of all prior liens and incumbrances.

A tax lien has no necessary or natural preference over the prior liens of individuals.

The only reasons why a tax lien and title should be regarded as paramount to other liens and titles, are : 1st. A tax lien is a charge exclusively *in rem.* 2d. The character of the State as sovereign, necessarily gives to her liens for taxes precedence of all others. 3d. The right of "priority of payment" which belongs to the State, involves also priority of lien to secure payment. 4th. By our revenue law, a tax lien is to be preferred to others.

A tax, though usually made by law, a lien upon property, is really a personal charge. It is defined to be "a contribution imposed by government upon individuals for the use of the State." (Burrill's Law Dict. *verb* Tax.)

A B owns a tract of land, upon which he pays a tax. Now the tax is not owing by the land, nor does it, like rent, issue out of it. But it is owing by A B, personally, and the amount of it is determined by the value of the land. In some cases, as where property is assessed to unknown owners, it would appear at first glance, that the tax was exclusively a charge *in rem.* But even in such cases, it is, in theory, a charge upon the unknown owner, though the State is necessarily restricted to its proceeding *in rem* to recover it. The fact that a personal action is rarely resorted to for the collection of taxes, proves nothing. The right to resort to such an action is undoubted. But the State has a right to select its remedy, and it usually selects the proceeding *in rem* as more expeditious and efficacious than any other. Tax sales, in principle, differ very little from judicial sales. The State (the creditor,) sells the property of the citizen (the debtor,) because he has failed to pay the tax (debt,) assessed against him, and our law has increased the natural similarity, by providing that an assessment shall have the force and operation of a judgment and execution. (Wood's Dig. Sec. 32, Rev. Act, 623.)

It would be as proper to say that the property of a debtor, sold under execution, owed the debt, as to say that property sold for taxes, and not the owner, owed the tax.

The principle of personal amenability is daily recognized by the legislative, as well as the judicial, action of the government. An example of this sort of recognition may be seen in the fact that though property is often taxed when the owner is unknown, it is never taxed where there is no owner. Upon precisely the same principle, the State never taxes its own property; for that would involve the absurdity of a State being debtor to itself. Upon no other principle can these two exceptions to general taxation be sustained. (*Rex* v. *St. Luke's Hospital,* 2 Bur. 1053 —1065.)

The word "tax" is the modern synonym of the feudal term, "talliage," which Lord Coke, after giving its etymology, defines thus: "tallagium is a general word and doth include all subsi-

dies, taxes, tenths, fifteenths, impositions or other burdens, or charge put or set upon any man, and so is expounded in our books." (Coke's 2d Inst. fol. 533; *Pierce* v. *The City of Boston*, 3 Met. 521; *Burd* v. *Ramsey*, 9 Serg. & Rawle, 109; *Johnson* v. *McIntyre*, 1 Bibb, 295.)

II. As to the preliminary objection made by the Appellant at the trial, viz: that Appellant's rights could not be determined in a foreclosure suit, it embodies in another form the question we have been discussing. For the only reason why Appellant's rights cannot be determined in this suit, is that he claims by title paramount; and he can only claim by title paramount, because a tax lien is exclusively a charge on the property, independent of its owner.

A party is said to claim in privity with another, when he deraigns title from that other. This is called privity of estate. (Coke on Litt. 271; 8 Coke, 42 b, and Secs. 460, 461, Littleton's Tenures.)

A party not claiming by, through, or under, another, has no privity of estate or title; but if he has the superior title, he is said to be in by title paramount.

Now, *quere*, must not the purchaser at a tax sale deduce title from the person to whom the property was assessed? If our argument, that the tax is a personal charge primarily, and not a mere lien on the property, irrespective of the ownership, be sound, it is evident that he must. The fact that a sale for taxes is an adversary sale, does not affect the privity of title. Sales under execution, foreclosure sales—in a word, all judicial sales, are adversary sales. Yet the purchaser at such sales claims in privity with him whose property is sold.

There is nothing in the assumption that the lien of a sovereign State should be preferred to the prior liens of individuals. The error arises from confounding the attributes of the State as sovereign with her rights as creditor.

Undoubtedly, the general right of a State to tax her citizens is anterior and paramount to the rights of property of particular citizens. But the actual imposition of taxes, (taxes on property, we mean,) and the remedy for their collection, are directly dependent upon the rights of private property; for it is evident that no such tax can be imposed or collected in a country where

the institution of private property does not exist. In other words, although the tax pertains to the State as sovereign, she collects it in her character of creditor.

There is no natural distinction between a debt due a sovereign, and a debt due a citizen. The quality of sovereignty affects the mode of contracting the debt, but not the manner of payment. True, artificial preferences have been introduced in most countries in favor of sovereign creditors; but the fact that they owe their origin to positive law, proves that they are not inherent qualities.

The right to take private property for the benefit of the public, differs greatly from the right to impose taxes, and in a still greater degree from the right to sell property for the payment of taxes. In no respect is this difference more apparent, than in the fact that the former may be exercised irrespective of who is the owner of the property, while the exercise of the latter depends directly upon the ownership.

One other class of considerations occurs to us in connection with this branch of the argument.

In case of a mortgage, our law makes it the special duty of the mortgagor or his grantee in possession to pay off the taxes on the mortgaged property. In other words, he or his grantee is deemed owner of the property for purposes of taxation. The mortgagee is assessed and pays a full tax upon his mortgage. (Rev. Law, Secs. 3—5, Wood's Dig. 615, 616.)

The law has apparently recognized the existence of the two separate estates or interests of the mortgagor and mortgagee, and taxed each independent of the other. The mortgagor is in no wise responsible for the taxes on the mortgage; nor, as it seems to us, is the mortgagee any more responsible for the taxes on the mortgagor. The mortgagee is under no obligation to pay taxes on the mortgaged premises, nor is he possessed of the means to compel the mortgagor to perform that duty.

Our view of this question is fortified by the language of Sections 22, 23, and 32, of the Revenue Act. (Wood's Dig. 620—623.)

Section 32 declares that the assessment shall be a lien on the property of the "delinquent." Again, Section 23 provides that a "deed made in conformity with the requirements of Section

22, shall convey to the grantee all the right, title, interest, claim, possession, and right of possession, legal and equitable, or otherwise, of each and every delinquent," etc.

Now, who was the delinquent here? Not Kelsey—for he had no possession or control of the property at the time. Besides, he was assessed for taxes on his mortgage; and our law separates ·the estate of the mortgagee from that of the mortgagor for the purposes of taxation.

As the mortgagee cannot be termed a " delinquent," who can? We answer, the mortgagor—to whom the property was assessed—or a party in possession claiming under him. In this case, the assessment was in the name of Abbott, but as he lost his possession in May, 1857, by a sale to Clark & Co. it may be that the latter thereby assumed in law the payment of the tax, and were therefore the real delinquents. Such at least seems to be settled by the case cited from 3 Harris, (*Gormley's Appeal*). The effect of the tax sale, (granting it to have been regular,) was to transfer to the purchaser the estate of the delinquents, Clark & Co. of which firm he was a member.

Now, their estate was the estate of Abbott & Edwards, and no more. It was subject to all subsisting liens and incumbrances created by them, and particularly to this mortgage. It follows that the purchaser took subject to the mortgage.

If we suppose Abbott & Edwards to have been the delinquents, the result is the same.

The provisions of Section 23 above directly sustain the position that a purchaser at a tax sale claims in privity with the owner to whom the property was assessed. The purchaser acquires the title of the delinquent, whatever it may be. This is the declaration of the Act. And a subsequent portion of the same section declares that the " tax deed shall be evidence that all the right, title, interest, etc. of the delinquent, has been subrogated to the grantee," etc. (Wood's Dig. 621.) .

III.   The assessment in this case is insufficient and void.

1st. It is not dated.   2d. It neither states the extent of the lot, nor furnishes data whence the extent may be ascertained. 3d. It does not contain the name of the " township, city, or incorporated town," where the premises are situated.   4th. It is too vague and uncertain in other respects.

The omission of the extent of the lot, or of data from which the extent may be ascertained, is fatal. By Section 17 of the Act, it is provided that the property assessed must be sold to the bidder who will take the "smallest part of the property for the tax." (*Ferris* v. *Coover*, 10 Cal. 632; *Tallman* v. *White*, 2 Com. 69; *Doughty* v. *Hope*, 3 Denio, 594; S. C. 1 Com. 79; *Strykes* v. *Kelly*, 2 Denio, 323; *Anderson* v. *The State*, 1 Cushman, 23 Miss. 472; *Wister* v. *Kammerer*, 2 Yeates, Pa. 100; *Young* v. *Martin*, 2 Yeates, 312; *Watt* v. *Gilmore*, Id. 330; *Sneverly* v. *Dickey*, Id. 331; 3 Id. 186.) A sale of unseated land, describing it merely as so many acres is void for uncertainty." (13 Serg. & Rawle, 151; 7 Id. 394; *Hubley* v. *Keyser*, 2 Penn. Penrose & Watts, 496; *Libby* v. *Burnham*, 15 Mass. 144; *Thayer* v. *Stearns*, 1 Pick. 482; *Blossom* v. *Cannon*, 14 Mass. 177; *Johnson* v. *McIntyre*, 1 Bibb. 295.)

IV. Granting all that can be asked in favor of a lien for taxes —granting that it will divest a lien created before the first of March of each year—yet no Court will permit the party whose duty it is to pay the tax to take advantage of his failure to perform his duty, and buy in the property at a tax sale so as to cut out the prior mortgage. Clark & Co. being in possession under a claim of title, ought, by law, to have paid the tax. Selling property for taxes, is merely one way of paying the tax; a more expensive way, but still a way of payment. Clark & Co. neglected to pay in the usual manner—but one of the firm took it upon himself to pay in another manner. Shall the latter payment have a different operation from the former? But it will be said that the Appellant, Clark, is only one member of the firm—and he bought for himself and not for the firm. Then, he was guilty of fraud on his firm—a fraud which the law will not allow to succeed. A partner buying in partnership property is deemed in equity a Trustee for the firm; and here the purchase by Clark must inure for the benefit of Clark & Co.

Grant, however, that such a result would not follow—still Clark, being a member of the firm, and cognizant of all the facts connected with the property, was guilty in equity of a positive fraud in allowing the property to be sold and becoming the purchaser. What a firm cannot legally do, no member of the firm can do.

BALDWIN, J. delivered the opinion of the Court—TERRY, C. J. concurring.

Several questions of extraordinary interest and importance arise in this case, and they have been argued with much force and learning.

The facts are few and simple.

The Respondent filed his bill in equity to foreclose a mortgage executed to him by Abbott & Edwards, on a certain lot in the city of Nevada. To this bill the mortgagors alone were made defendants, but afterward the plaintiff amended his bill and made Clark a party; the bill charging that Clark claimed some interest in the property acquired after the execution of the mortgage. Abbott & Edwards made default. Clark answered and set up a tax title and deed in himself, executed on the 14th of December, 1857, after the date of the mortgage, which is dated 1st January, 1857. The plaintiffs demurred to this answer, but no action was taken on the demurrer, the consideration of it being deferred until the trial on the merits. On the trial, Clark produced his tax deed, and also a Sheriff's deed to himself and his partner, Wilbur, dated September 6th, 1858, which last deed was founded on a judicial sale by the Sheriff of Nevada County, made on the 5th June, 1857. The plaintiff, in answer, produced the assessment of the property for the year 1857. He also proved that Clark & Co. (Wilbur & Clark) had been in the actual possession of the premises since May, 1857. They purchased the building 5th June, 1857, at Sheriff's sale, as said before.

The assessment is as follows: " House and lot north side of Commercial Street, formerly owned by Belle Creole; also brick store north side of Commercial Street, and second from the corner of Pine and Commercial, including lot and all the appurtenances, seven thousand dollars." At the top of the page are the following words: " Nevada County, Nevada Township, Nevada City." There is no date to the assessment. The view which we have taken of this case renders it unnecessary to go into an examination of many of the propositions which have been elaborately argued at the bar.

The Appellant insists that the Court of Chancery has no jurisdiction over the tax title. Probably a sufficient reply to this is

found in the fact that he himself sets it up as a defense. He does not object to having been made unnecessarily or improperly a party, nor does he set up this matter as so far denying the power of the Court to pass upon his interest or claim; but seems to urge it as a full and sufficient defense to the decree of foreclosure.

We proceed to consider the defense on the merits.

The case of *Green* v. *Craft*, (6 Cush. 28 Miss. 70,) is in point on the question of the validity of the assessment. The Mississippi Statute, (Hutch. Code, 200, Sec. 5,) contains the same clause in substance as ours in respect to the effect of the tax deed. The same point there was taken and pressed. But the Court said: " The term ' taxes,' it is said, includes all contributions imposed by government upon individuals for the service of the State. The *individual*, and not his property, pays the tax. The property is resorted to for the purpose of ascertaining the amount of the tax with which the owner must be charged, and for the purpose of enforcing payment when the owner shall be legally in default in paying at the time *stipulated* by law. No person is a tax-payer until he has been so declared by the proper officer. The assessment must be as certain in designating the person chargeable with the tax at the commencement of the fiscal year, as it must be in designating the amount of the charge, and the property to which reference is made for the purpose of ascertaining such amount.

An assessment *must be made*, in order to create a liability on the part of the individual to pay the tax. If no such assessment be made, no liability is created, and, of course, there can be no default in discharging that which has no existence. To authorize the Collector to sell property to enforce the payment of taxes there must be both a legal liability on the part of the owner to pay the tax, and a legal default in making payment."

The Revenue Act of 1854, (Acts, 104,) provides, by the 64th Section, that lands occupied by any person not the owner thereof, shall be listed in the name of the owner, if known; if not, in the name of the occupant; and by Section 65, unoccupied lands shall be listed in the name of the owner, if known; otherwise, as lands of persons unknown; lots or real property within the limits of any incorporated city shall be listed separately, as the same may be owned or held; or when this is unknown, in

40

accordance with the survey or plan. By Section 67, in case of a mortgage of real estate, the mortgagor shall pay the taxes on the value of the property. By Section 74, mortgages are taxed. By Section 89, *every assessment made in conformity with the spirit and intention* of the provisions of this act, shall remain as a judgment and lien, and have the force and effect of an execution against *the party and property* liable for the taxes thereon. By Section 99, the lien of the State for all taxes for State and county purposes, shall attach on all real and personal property on the first day of March, annually, and such lien, to the absolute exclusion of other liens, shall continue till all taxes thereon shall be paid, etc.

In 1857, (29th April,) another Revenue Act was passed. By Section 4 of this Act, it is made the duty of the Assessor to prepare a tax list or assessment roll, in which shall be listed or assessed all the real estate, etc. and which shall contain the names of all taxable inhabitants.

2. All real estate and improvements on public lands *taxable to each,* giving the metes and bounds, etc.

By Section 22, it is provided that, upon the delivery to the County Recorder of the duplicate certificates required in a previous section, the lien of the State shall become, and is, vested in the purchaser at the tax sale, and when not redeemed by payment, etc. the title of every *assessed delinquent* to the land purchased shall vest, etc.

By Section 32, every tax levied under the provisions or authority of this act, is hereby made *a judgment against the person,* and a lien against the property assessed, which lien shall attach and judgment date as of the first Monday in March of each year, and shall have the full force and effect of an execution against all property *of the delinquent,* which judgment shall not be satisfied nor the lien removed until the taxes are all paid, or the property has absolutely vested in the purchaser under a sale for taxes.

This provision seems to be in substitution of Sections 89 and 99, of the Act of 1854.

These citations from the statute show that the assessment must be made against the owner, when known.

2. These proceedings on tax sales are *strictissimi juris.* They are cases of a naked statutory power, and all the steps directed

by the statute must be strictly pursued. (*Ferris* v. *Coover*, 10 Cal. 632,) and the numerous cases there cited.

We do not understand that the statute making the certificate and deed, *prima facie* evidence of certain facts, does away with the obligation to follow the directions of the law. If within the power of the Legislature to do this, it has not attempted it. It has only shifted the burden of proof, leaving the effect of the facts when proven, as it was before.

The assessment was not in the name of the owner, nor is it shown that the owner was unknown. It seems to be conceded that the name of "J. C. Abbott" appeared in the paper, but the finding does not so state. It seems that this was the property of Abbott & Edwards, who mortgaged it; and the statute contemplates that the mortgagors are the proper persons to whom the property should be assessed—the mortgagees are assessed on the mortgage. But the assessment was fatally defective in omitting "to give the metes and bounds, or describing the premises by lots or fractions of lots." (Wood's Dig. 615, Sec. 4.) It is obvious that it was designed that some definite account of the extent of the lot should be required; for it is provided by Section 17, that the property must be sold to the bidder who will take the smallest part of the property for the tax. It seems that this assessment roll has no date, and that it does not give the township, city, or incorporated town, as required. But it is not necessary to pass on these latter objections.

3. Even if these objections failed, it is very hard to see how the last point taken by the Appellant can be avoided. Clark & Co. went into possession of these premises; they were in possession at the time of this tax; they had bought at Sheriff's sale, which gave them a right to the profits until redemption—these they were enjoying. Between them and defendants in execution, they should in equity have paid the taxes; and the statute casts this duty of paying the taxes on the party in possession, if the owner does not. They can derive no benefit from a failure to pay them, and thus suffering the lot to be sold and buying it. In equity, the purchase would seem to be merely an advance, and this, whether made by one or both of the partners, for the duty was several as well as joint.

We think the judgment should be affirmed.