The facts sufficiently appear in the opinion.
In this case there are cross appeals, but for convenience they will be considered together. In the year 1888 the defendant was assessed in Lander county upon its railroad and a large amount of other property, including the possessory claim to both surveyed and unsurveyed lands embraced within the United States land grants of 1862 and 1864 to the Pacific railroads. Upon all the property, except land, the defendant tendered the taxes due before they became delinquent, and subsequent to the commencement of the action, upon demand of the district attorney, the amount so tendered was paid to him. The action was then continued for the purpose of recovering the taxes due upon the lands, and the penalties upon the other taxes assessed, upon the theory that the tender was not sufficient. The state recovered for the taxes and penalties upon the surveyed lands, and from this part of the judgment the defendant appeals. But the court held that the unsurveyed lands were not subject to taxation, and that the tender and payment of the other taxes were sufficient to avoid the penalties, and from these rulings the state appeals.
In our judgment the questions presented concerning the taxability of the surveyed and unsurveyed lands have been substantially settled by this court in the cases ofState v. Central Pac. R. Co., 20 Nev. 372, and State v. Central Pac. R. Co.,21 Nev. 94, which were followed by the court below; but notwithstanding, as new points are urged upon these appeals, we have given the matter a careful reconsideration.
Taxation of surveyed, but unpatented, lands within thePacific grants.
A part of the lands assessed were patented to the defendant, and as to these it seems to be admitted that the judgment is correct. But as is well known, the supreme court of the United States, in the cases of Railway Co. v.Prescott, 16 Wall. 603; Railway Co. v.McShane, 22 Wall. 444, and Northern Pac. R.Co. v. Traill Co., 115 U. S. 600, held that the United States still retained a lien upon the unpatented lands for the cost of *Page 254 
surveying, selecting and conveying them, and that until such costs were paid the lands were not subject to state taxation for the reason, as stated, that to permit a sale of them for taxes would destroy that lien, or at least embarrass the government in the assertion of its right to recover such costs. As it was also held that the grants were grants inprœsenti, conveying to the companies the full beneficial ownership of the lands, including the right of possession, there was no occasion for them to pay such costs, and the result was that for years the Pacific railroads substantially escaped all taxation upon the grants. To remedy this, congress by act of July 10, 1886 (Stat. U. S. 1885-87, p. 143), enacted that no such lands, except unsurveyed lands, should be exempt from taxation by reason of that lien; provided that at any sale for taxes the purchaser must take the land sold subject to the lien; and further, that at such sale the United States may become a preferred purchaser, in which case the lands sold shall be restored to the public domain.
As we understand the defendant's contention, it is now urged that congress did not intend by this act to entirely waive this lien and make the land absolutely subject to state taxation, but only upon the condition that the lien of the government for such costs should still subsist, and that at any sale for taxes the United States may be a preferred purchaser. Upon this postulate it is then argued that as it was held in the cases mentioned that a sale by the state for taxes would destroy the lien, in the absence of a legislative act accepting the conditions mentioned, a sale by the state would still have the same effect, and consequently the right to tax does not yet exist; also, that in the absence of a legislative act authorizing it, the United States has no right to become a preferred purchaser at a tax sale, and consequently this condition has not been fulfilled.
Whatever difficulty there may be in rendering a decision that will be entirely in harmony with the principles asserted in Railway Co. v. Prescott and cases following it, we think that several satisfactory answers may be made to this argument.
1. As the sovereign proprietor, congress has full power to dispose of the public lands upon such terms and under such conditions as it may deem proper. (Irvine v.Marshall, 20 How, 561; Vansickle v.Haines, 7 Nev. 261.) Thus in Gibson v.Chouteau, 13 Wall. 99, it is said: "With respect to the public domain, the constitution vests in congress the power of disposition and *Page 255 
of making all needful rules and regulations. That power is subject to no limitations. Congress has the absolute right to prescribe the times, the conditions, and the mode of transferring this property, or any part of it, and to designate the persons to whom the transfer shall be made." It will scarcely be denied that the right which the United States still has in this land is an interest in the public domain, as such, and over which it has such full authority. Having such authority no reason is perceived why the provisos in the act of July 10, 1886, do not become the supreme law of the land, so far as the taxation of these grants is concerned. Admittedly, congress has no right to enact laws regulating generally the assessment, the taxation, or the sale for taxes of property in the different states. But as to these lands, the United States is both a proprietor and a sovereign. The act of congress disposing of them become general laws binding upon all, because all such acts are specially within the powers conferred upon it by the constitution. There is nothing in the act of July 10th indicating that congress expected a legislative acceptance by the states of the terms proposed, and in our judgment there is no occasion for such acceptance. The act is a grant, or in the nature of a grant, to the states and territories, in which the conditions become the controlling law. That act and the state statutes concerning revenue must be construed together. All the state laws apply to the taxation of these lands until they come in conflict with the conditions prescribed by congress, and then they must give way. Thus construed, we perceive no reason why they may not, without further legislation, work harmoniously together.
2. As just stated, the act of July 10, 1886, is a grant to the state, granting it the privilege, so far as the United States is concerned, of taxing a large amount of property which previously had not been subject to taxation. It conferred a benefit upon the state, to the acceptance of which there can be no possible objection. Under these circumstances, conceding it to be necessary that the state should have accepted the conditions of the grant, in the absence of a showing that it has refused to do so, such acceptance is to be presumed. (Railroad Co. v.Lowe, 114 U. S. 525, and 27 Kan. 749.)
Again, it would seem that the fact that these lands have been assessed by the state, and that the state is now in court endeavoring *Page 256 
to enforce that assessment, which without this act it clearly had no right to assess, should, of itself, be considered an acceptance of the conditions therein contained.
3. It will be noticed that it is only the possessory claim to this land that is assessed. Whatever may be the meaning of this term "possessory claim," and we shall consider it more at length hereafter, it is evident that the thing attempted to be taxed is something less than the fee. While, in view of the fact that any sale of government land for taxes is simply null and void (McGoon v.Scales, 9 Wall. 23; Black, Tax Titles, Sec. 129), it is difficult to understand how any such sale could ever affect the government title or its lieu upon the land; it is clear, under the decisions, that it would not do so here. Against such an assessment, whatever may be said of its validity otherwise, no objection could ever have been made upon the ground that it was an attempt to subject the property of the United States to taxation. Nothing but the defendant's interest in the land can be reached by such an assessment. It cannot possibly affect the government title or lieu any more than a voluntary sale by the defendant would do so. (Wright v. Cradlebaugh,3 Nev. 341; Forbes v. Gracey, 94 U. S. 762.) We conclude that the surveyed lands were properly held to be subject to taxation.
Possessory claim to unsurveyed lands.
The answer denies that the defendant had any possession, possessory claim, or possessory interest, in the land assessed, or any right or interest therein, except such as it derived under the land grants already mentioned. It is contended that this is insufficient because it does not comply with Gen. Stat. Sec. 1108, and deny "all claim, title or interest in the property assessed."
All real estate, whether it is the title in fee or the possessory claim that is assessed, is to be assessed to the owner; if it is not, the assessment is void. Sometimes, however, there is more than one person claiming to be the owner, and justice does not require that the rule stated shall be extended further than is necessary for the protection of the parties interested in the property. It is often difficult to determine among several claimants who the true owner is, and the statute has consequently provided that the one to whom it is assessed must, to avoid the assessment, not only plead that he is not the owner, but also deny *Page 257 
all claim, title or interest in the property. But section 1108 provides for several defenses, besides this denial; among others, that the property is exempt from taxation. The defendant may plead any or all of these defenses, or set up one as to part of the property, and others as to the rest. If he is assessed for the land itself, instead of the possessory claim, and the title is still in the government, under the plea of exemption of United States property, he may escape all taxation. (Wright v. Cradlebaugh, 3 Nev. 341.) Land held under the preemption or homestead law is exempt from taxation until the issuance of the final certificate, and this is a defense available to the preemption or homestead claimant. (Carroll v. Safford, 3 How 441;Witherspoon v. Duncan, 4 Wall 210.) But here we have a case where there may be two estates in the same land — title in fee and title in possession — of which one is subject to taxation and the other is not. What possible reason can there be for refusing to allow the taxpayer to deny, under one clause of the statute, the claim or ownership which is subject to assessment, and plead that the other is exempt? The facts are what constitute the defense, and not the technical manner in which they are stated. To illustrate, in this very case, although the answer denies possession or possessory claim to the surveyed land, it does not state facts showing that the defendant has not such an interest in that land as is subject to taxation, and consequently the answer as to such land is insufficient. But as to the unsurveyed land, the title is still in the government, and we held upon the former appeal of the case (21 Nev. 94) that whatever claim the defendant had by virtue of its grant alone, is exempt from taxation. Then if it has no possessory claim thereto, it has nothing that can be taxed. The defenses set up are certainly within the spirit and meaning of the act, and we conclude that the answer is sufficient.
Do the facts show that the defendant has a possessory claim to this land, within the meaning of the revenue law?
Gen. Stats. Sec. 1088, directs that "all real estate including the ownership, or claim to, or possession of, or right of possession of any land or improvements." shall be subject to assessment. Upon this point it is stipulated "that said defendant has heretofore mortgaged said lands described in the complaint and has at divers times leased various portions of it. That said defendant has never had any other possession of any part *Page 258 
of said lands than such as may be inferred from executing said mortgages and leases and by virtue of the land grants to it of 1862 and 1864."
Generally, it is the full ownership — the title in fee of lands, or what is equivalent to it — that is assessed. In the absence of a showing to the contrary, it is presumed that the assessment is based upon this title. (Wright
v. Cradlebaugh, supra.) It is believed that the case of possessory claims to the public lands is the only exception to this rule.
But in the new states and territories, where the settlements were generally in advance of the public surveys, it was found that often large and valuable properties were situated upon land to which no title could be obtained. Under such circumstances it became a necessity that some rule should be found for determining in whom the right to this property lay, and the most natural as well as equitable, was that it belonged to the first possessor or his grantees. Accordingly, such possession has been treated as title sufficient to maintain trespass, ejectment, and many other actions. Such possessory interests have been subject to contract and sale almost as freely as title in fee. They descend to the heir and constitute assets of the estate in the hands of the executor or administrator. But such possession, to be of any validity, must be actual and substantial. It "must be an actual occupation, a complete subjugation to the will and control, a pedispossessio. The mere assertion of title, the casual or occasional doing of some act upon the premises, have never been held sufficient. * * * By actual possession is meant a subjection to the will and dominion of the claimant, and is usually evidenced by occupation, by a substantial inclosure, by cultivation, or by appropriate use, according to the particular locality and quality of the property." (Robinson v. Mining Co., 5 Nev. 44, 66, 67;Coryell v. Cain, 16 Cal. 573.) Unable to tax the land itself, by reason of the title being in the United States, the plan was evolved of taxing this possession and possessory right, as something separate and distinct from the title, and which was, in all other ways, treated as property. There were then two titles which subjected land to state taxation: First, title in fee; secondly, where the title was still in the governments but the person taxed was the owner of the right to the actual possession. This possession is something entirely separate and distinct from the title and in no wise dependent upon it. It is not the possession *Page 259 
that is presumed to follow the title. The very situation which induced the legislative to adopt the scheme of taxing possessory claims shows that it was actual possession that was meant. If the title was in the individual, the land was what was taxed. If it was public land, and unoccupied, there was nothing subject to taxation. If occupied, it was the actual possession of the land, with the improvements placed thereon, that constituted the property to be assessed.
While the language of the statute is quite broad, it must be remembered that it is always property, and not a mere claim to it, that is to be assessed. The terms used must be considered as largely convertible and synonymous. This is the view that seems to have been taken by the courts. Thus, in People v. Frisbie, 31 Cal. 146, it is said: "The term `claim,' as used in this provision means something more than the mere assertion of of the party assessed that he owns the property described in the list. While the word carries with it the idea of such assertion, it involves also the idea of an actual possession of the land claimed." It is "possession claiming the land" that is liable to be taxed. (Barrett v. Amerein,36 Cal. 322.) State v. Moore, 12 Cal. 56;People v. Shearer, 30 Cal. 645;Hale Norcross Co. v. Storey Co.,1 Nev. 104, are to the same effect.
As appears from the stipulation, the defendant here has never had any actual possession of the land. So far as shown there is no actual possession in any one to which it can make any claim, nor does it make any. The fact that the defendant has mortgaged the land or leased it, neither constitutes actual possession or claim to such possession, nor do those instruments confer upon the mortgagee or lessee any right to the possession. Under these circumstances the title to the land not being subject to taxation, there is nothing else to tax.
Tender. In our judgment the tender of the taxes to the treasurer, as ex-officio tax receiver, and their subsequent payment to the district attorney, were sufficient to avoid the penalties. The defendant, at the proper time, tendered all the taxes due upon all its property, except land. We held upon the former appeal that it had a right to make such payment, and need not tender the full amount due upon the entire assessment, which included other subdivisions of property. The tender was doubtless refused upon the theory that the defendant must pay upon all or none. The receipt demanded seems to have *Page 260 
been in proper form, and was one that the statute (Gen. Stat. Sec. 1096) requires the tax receiver to give upon payment of the taxes. Whatever may be the general rule as to the validity of a tender accompanied by a demand for a receipt for the debt, we are clearly of the opinion that where the statute requires such a receipt to be given, it is a right that the debtor may insist upon. (2 Benj. Sales. Sec. 1078;Cole v. Blake, Peake, 239; Saunders
v. Frost, 5 Pick. 270.) Again, the only objection seems to have been to the amount of money tendered, and not to the demand for a receipt. Under such circumstances, it seems just to hold that any objection to the receipt or its form was waived. (2 Whart. Cont. Sec. 977; Richardson v.Jackson, 8 Mees. W. 298.) The money being promptly paid to the district attorney when demanded by him, it must be presumed that the tender was kept good.
The judgment and orders overruling motions for new trial are affirmed.