[No. 1597.]

THE STATE OF NEVADA, RESPONDENT, *v.* ERNST &
    ESSER, MONITOR LAND AND LIVE STOCK COM-
    PANY, A CORPORATION, AND M. S. EISNER, AND ALL
    OWNERS, KNOWN OR UNKNOWN, AND THE REAL ESTATE
    AND IMPROVEMENTS SITUATE IN THE COUNTY OF NYE,
    STATE OF NEVADA, AND DESCRIBED IN THE COMPLAINT
    IN THIS ACTION, APPELLANTS.

TAXATION—BOARD OF EQUALIZATION—AUTHORITY—ASSESSMENT—CHANGE—VAL-
    IDITY.  Comp. Laws, 1098, provides that the board of equalization shall
    have power to determine the valuation of any property assessed, and
    may change and correct any valuation, either by adding thereto, or
    deducting therefrom, and to require the assessor to enter upon the
    assessment roll property which has not been assessed.  The assessor
    returned an assessment of E.'s property for 1897, and subsequently the
    board of equalization ordered the assessor to add to E.'s assessment the
    name of the M. L. & L. Co., and to add certain land and 10,000 head of
    sheep to the assessment of E. and the land company.  The assessor had
    returned no assessment against the land company, and there was no
    evidence that it had any interest in the property assessed against E.,
    or that E. had any interest in the land company, except as a stock-
    holder, and there was evidence before the board that the land added to
    the assessment of E. and the land company belonged to a third party,
    and that E. did not own the sheep:  *Held*, that the order of the board
    was void, as exceeding its powers, since it had no authority to make
    an original assessment, or to assess property to a person who is not
    shown to be the owner of it.

APPEAL from the Third Judicial District Court, Nye
County; *A. L. Fitzgerald*, Judge.

Action by the State against Ernst & Esser, and others, for
delinquent taxes.  From a judgment in favor of plaintiff
and from an order denying a new trial, defendants appeal.
**Reversed.**

The facts sufficiently appear in the opinion.

*Trenmor Coffin*, for Appellants:

I.  The action of the board of equalization in adding the
names of "The Monitor Land and Live Stock Company and
M. S. Eisner" to the name of Ernst & Esser upon the assess-
ment roll rendered the assessment invalid.  It certainly was
invalid as to all additions made by the board of equalization.
The action of the board of equalization rendered the whole
assessment fictitious and unreal.  (*People* v. *Sneath & Arnold*,
28 Cal. 613–15.)  An assessment which includes more land or

property than belongs to one firm, corporation or individual is void. A judgment obtained upon such an assessment cannot stand. (Welty on Assessments, secs. 64 and 112, and authorities cited; *People* v. *Sneath & Arnold*, 28 Cal. 614-15; *Roe* v. *Williams*, 20 Wis. 228; *Baker* v. *Blake*, 36 Me. 435-6; *Whitney* v. *Thomas*, 23 N. Y. 281, 284-5.)

II. The *situs* of the sheep, for the purpose of taxation, was in Elko county. Their home ranch was in that county. They were bred, born, branded, marked, raised, docked, dipped, and otherwise cared for in that county until the lambs became sheep (till they were weaned and had their tails cut off), and until they could travel and get their own living. (*State* v. *Shaw*, 21 Nev. 222, 229, 233; *Barnes* v. *Woodbury*, 17 Nev. 383; also dissenting opinion at pp. 389-401, and authorities cited; *Ford* v. *McGregor*, 20 Nev. 446; *Whitmore* v. *McGregor*, 20 Nev. 451.)

III. It is within the province of the legislature to fix the *situs* of all personal property for the purpose of taxation. "All property, both real and personal; property of every kind susceptible of taxation, whether owned by residents or non-residents, corporations or individuals, is subject to legislative control. It may be assessed and taxed in the county where it is situated or elsewhere, and the taxes made payable where the assessment is made, where the property is situated, or such other place as the legislative will may have directed." (Welty on Assessments, secs. 51, 52, 53, and authorities cited; *Dubuque* v. *Chicago M. R. Co.*, 47 Iowa, 196; *Vanatta* v. *Runyon*, 41 N. J. Law, 98, 104-5; *People* v. *McLean*, 80 N. Y. 255-258.)

IV. Property must be assessed in the name of the true owner if known, or the assessment will be void. (Comp. Laws, 1093; Stats. 1893, pp. 45-6, sec. 17; *State* v. *C. P. R. R. Co.*, 21 Nev. 256; *Reese* v. *Shearer*, 49 N. J. L. 610; *Kelsey* v. *Abbott*, 13 Cal. 609; *Blatner* v. *Davis*, 32 Cal. 328; *Hearst* v. *Eggleston*, 55 Cal. 365; *Bosworth* v. *Webster*, 64 Cal. 1; *People* v. *Whipple*, 47 Cal. 591; *Crawford* v. *Schmidt*, 47 Cal. 617-18; *Grotefend* v. *Ultz*, 53 Cal. 666; *Grimm* v. *O'Connel*, 54 Cal. 522; *Brady* v. *Dowden*, 59 Cal. 51; *Lake Co.* v. *S. B. Q. M. Co.*, 66 Cal. 21; 25 Am. & Eng. Ency. Law, 214; Welty on Law of Assessments, secs. 63 and 64, and notes.)

V.   If each subdivision of land entered upon the assessment roll is not assessed separately, and a separate valuation placed thereon, the assessment is void.   (Comp. Laws, 1105; Stats. 1891, p. 146, sec. 33; *Peers* v. *Reed*, 23 Nev. 404, 408; *State* v. *C. P. R. R. Co.*, 21 Nev. 94, 105-6; Cooley on Taxation, 279-80; *People* v. *Hollister*, 47 Cal. 408; Welty, sec. 111, p. 214-15, also note 4 on p. 215; *People* v. *Moore*, 1 Idaho, 667-70; *Terrell* v. *Groves*, 18 Cal. 149; *Doster* v. *Sterling*, 33 Kan. 385-6-7; *Mason* v. *Ricker*, 63 Me. 382; Welty, sec. 303, p. 451.)

VI.   A suit to enforce tax in gross upon several subdivisions of land brought for a gross sum, assessed against such subdivisions jointly, cannot be maintained.   (Const. of Texas, 1869, art. XII, secs. 20-22; *State* v. *Baker*, 49 Tex. 768; *Edmunds* v. *Galveston*, 53 Tex. 157; *Jordan* v. *Brennhan*, 57 Tex. 656-7; 25 Am. & Eng. Ency. Law, 272, and authorities cited.)

VII.   "Our statute does not require a separate assessment or valuation of lands and improvements, where both belong to the same owner, but on the contrary expressly directs that both be valued together."   (*State* v. *C. P. R. R. Co.*, 10 Nev. 48, 59-60; Comp. Laws Nev. 1873, vol. 2, sec. 3136; Stats. 1864-5, p. 277, sec. 12; Stats. 1891, pp. 141-2, sec. 17; Comp. Laws 1900, sec. 1093.)

VIII.   In this case the board of equalization fixed the value of the 10,000 sheep and 100 cattle.   The sheep and cattle were not assessed by the assessor.   The attempt of the board to assess them was without authority of law.   Boards of equalization are creatures of the statute, and every act of such a board must be by express authority of the legislature, and its records must show affirmatively the necessary jurisdictional facts.   (*State* v. *Commrs.*, 5 Nev. 319; *State* v. *Commrs.*, 6 Nev. 95-97; *Finch* v. *Tehama Co.*, 29 Cal. 453.)

IX.   The legislature has never authorized boards of equalization to assess property.   They may equalize, but not assess. The legislature has provided that assessors are the sole and exclusive officers whose duty it is to assess property.   The attempted valuation and assessment by the board of equalization was a nullity.   (Comp. Laws, 1084, 1093; Stats. 1893, pp. 44-5, secs. 8, 17; *State* v. *Kruttschnitt*, 4 Nev. 209-10;

*People* v. *Reynolds*, 28 Cal. 107; *People* v. *Hastings*, 29 Cal. 451; *People* v. *S. F. Savings Union*, 31 Cal. 132, 137-9; *People* v. *Hastings*, 34 Cal. 571, 574; *Farmers' Bank* v. *Board*, 97 Cal. 318, 323, *et seq.; Lyman* v. *Howe*, 64 Ark. 437; Welty, secs. 2, 10, 451, p. 7, note 3, sec. 4, p. 9, note 6a; Cooley on Taxation, 351; Black on Tax Titles, secs. 133-4.)

X. We venture the assertion that there was never an assessment roll or a pretended delinquent list offered to a court as evidence that showed a wider departure from or greater disregard for the requirements of the law than those offered and admitted in this case. Tax proceedings are *in invitum*, and to be valid must strictly follow the statute. The proceedings to be valid from the levy to the collection of the tax must be *strictissimi juris*. ( *Whitney* v. *Thomas*, 23 N. Y. 286; Cooley on Taxation, 353; *Kelsey* v. *Abbott*, 18 Cal. 618-19; *People* v. *Mahoney*, 55 Cal. 288; *Lake County* v. *S. B. Q. M. Co.*, 66 Cal. 20; *Emeric* v. *Alvarda*, 90 Cal. 446, 465.)

XI. An assessment made to a firm or in a firm name after the firm has been dissolved by the death of one of the copartners is void. (Welty on Assessments, sec. 63; *People* v. *Sneath & Arnold*, 28 Cal. 613-15.) There was no firm of "Ernst & Esser" in 1897. M. W. Esser, who had been a member of that firm, had died, and his estate had been administered upon and finally distributed prior to 1897.

*P. M. Bowler, Jr.*, and *Peter Breen*, for Respondent; *Wm. Woodburn*, Attorney-General, and *T. L. Oddie*, District Attorney of Nye County, also for Respondent:

I. This case does not require any discussion of the principle of legislative control over the assessment and taxation of property, and it may be conceded that the legislature has full control, an almost absolute control, subject only to the constitutional requirement that the rate shall be uniform and equal. There is, however, involved the question of legislative intent. The legal fiction that the *situs* of personal property for the purpose of taxation follows the person and residence of the owner does not obtain in this state. It is made the duty of each board of county commissioners to fix a rate of tax for county purposes on or before the first Monday of March of each year, and to levy the state and county

taxes upon the taxable property of the county, and from the date of levy a lien attaches on the real property for the tax levied upon personal property. (Comp. Laws, 1078, 1079.)

II. It is contended by counsel for appellant that Elko county is the *situs* of the sheep for the purpose of taxation, because their home ranch is in that county. We maintain that stock running at large, or sheep herded and grazed from one county into another in search of feed and water, and to avoid the storms of winter, have no home ranch; that it is not true, in the nature of the herd and the way they are handled and conducted, the sheep have no home, though they have a *situs* for the purpose of assessment and taxation. The home of cattle, horses, or other animals running at large, or of sheep, herded, driven and grazed, is, we respectfully submit, wherever they can get feed and water. So it is with the sheep in question—their home, as contradistinguished from *situs*, is wherever they may be found.

III. We respectfully submit that the *situs* of the sheep for the purpose of taxation was, and is, a question of fact, to be found by the jury, and is not a question of law. The court in *State* v. *Shaw* (p. 227) said: "Where personal property is used in different counties during the year, or stock is driven from one county to the other, or in pursuit of food naturally wanders across the lines, there is often difficulty in determining where for the purpose of taxation its home or *situs* is, but as it certainly may have a *situs* or locality of its own as well as real estate (*People* v. *Niles*, 35 Cal. 286), this difficulty does not relieve us from the duty of endeavoring to ascertain where it is. Like all disputed questions of fact, it must be determined by the evidence." It will be perceived that the court treats the question of *situs* as a question of fact, a fact to be found by and from the evidence. It is in no wise a question of law; the jury is the exclusive judge of the fact of the evidence, and it found for the state in this action, upon the evidence which was substantially ponderous in favor of the state. We apprehend it will not be set aside if there be any evidence to support it. *Barnes* v. *Woodbury*, *Ford* v. *McGregor*, *Whitmore* v. *McGregor*, commonly known as the home-ranch cases, can readily be distinguished from the case at hand. Ford and Whitmore

were temporarily in Nye county; they did not either of them hold or own any real property in that county upon which a lien could attach for a tax on personal property. Their, and each of their, personal property did not form any part of the wealth of Nye, hence there is a broad difference between those cases and the one we are dealing with. The State has as good and better claim for taxes on the home-ranch theory in Nye than appellants have in Elko, for it is as essential, and even more so, to have a winter range for sheep as a summer range; it is a matter of common knowledge that there is greater loss from the hardships of winter than in summer; while feed may be easily obtained almost anywhere in summer, it is hard to find suitable winter range, and Nye for fall, winter and spring is the counterpart of that ideal summer range in Elko. (*Graham* v. *Chautauqua*, 2 Pac. 550; *Price* v. *Kramer*, 4 Colo. 547; *Metcalf* v. *Fisher*, 31 Pac. 175; *Smith* v. *Mason*, 30 Pac. 170.)

IV.   Counsel for defendants insists that all property should be assessed to the true owner, if known, and, if unknown, then to unknown owners; this is true as an abstraction; this is the requirement, but it does not necessarily follow that, because property is not so assessed, it will, *ipso facto*, invalidate the assessment made in all cases, and under all circumstances; there is an old saying and a true one that "circumstances alter cases," and no better application of that saying can be had than in the very identical case we are considering. To the extent at least of the entries in black ink on the roll, which is of the property returned by Mr. Ernst in the sworn statement, he (Mr. Ernst) gave in that property; it is listed as he gave it in; it follows, therefore, as a matter of course, that he thereby became a party to the listing and assessment of that property. That a statement was demanded of him by the assessor, that he complied with the request, he returned the entire property as the property of Ernst & Esser, whereas, in truth and fact according to the claim made by his evidence, the firm of Ernst & Esser was *non est*, he listed the land of the Monitor Land and Live Stock Company, the ranches known as the Pine Creek, Hay Stacks and Mosquito Creek, as the property of Ernst & Esser. Mr. Ernst was a partner in the firm of Ernst & Esser; he also at that time

was director, general manager and managing agent of the Monitor Company, and the owner and holder of nearly all the shares of that company; if the property was listed to the wrong person, and if assessed and taxed to the wrong owner, there is no one to blame but him, for he, being a member of the firm, and an officer, agent of the Monitor Company, knew the land was the company's land, therefore, when he made the return to the assessor, he made a false return, which is made a misdemeanor by our law; when he made that statement, it being verified, he made it under the pains and penalties of the law, yet his perfidy is relied upon to defeat this action. This, we say, courts will not permit, or even tolerate, for in the language of Hardwood, Judge: "Applying the maxim that one should not be allowed to take advantage of his own wrong, plaintiffs ought not to be heard to assert such irregularity as a ground for avoiding said tax." (*Ward* v. *Board*, 29 Pac. Rep. 663.) Nor can the Monitor Company, of which Mr. Ernst is director and managing agent. (*State* v. *D. V. L. S. & L. Co.*, 21 Nev. 86.) It was the duty of Mr. Ernst, when returning the statement which he made to the assessor, to also return a statement of the property assessed in Elko county, and, when the property of the company was assessed in Elko, to also return to the assessor there whatever of property the company owned in Nye. (Comp. Laws, 1086.) Counsel said in his brief (p. 17, lines 7 and 9): "The board and assessor of Nye knew that the sheep were the property of the Monitor Company." They knew that Mr. Ernst returned a sworn statement that the ranches before mentioned as the property of the firm of Ernst & Esser, and all the other lands set forth therein, which statement was not true; the answer of defendants avers the ownership to be in the Monitor Company, which answer is sworn to by Mr. Ernst also. What can be said for the omission of the 100 head of cattle and the 200 bucks which were, are, and never were out of Nye since they came into it, which but for the board and assessor would have escaped taxation? We maintain that the matter of ownership of the property assessed was a question of fact; that when the assessor and the board brought their judgment upon questions of fact, and honestly and fairly exercised their judgment in the manner prescribed

by law, courts will not interfere with their judgment. That on all matters committed to the assessor or board of equalization such as to determine the *quantum* of property, its *situs* and the value, which are each and all questions of fact, they act judiciously, and their judgment thereon has the same force and effect of a judgment of a court of record, and can not be interfered with except for fraud or the other defenses permitted in a tax suit. (*State* v: *C. P. R. R.*, 21 Nev. 178; Comp. Laws, 1124; *Tehama Co.* v. *Bryan*, 68 Cal. 57; *Butte Co.* v. *Boyden*, 68 Cal. 189; *Humboldt Co.* v. *Dinsmore*, 75 Cal. 607; *Gaines* v. *Thompson*, 7 Wall. U. S. 347; *Porter.* v. *Haight*, 45 Cal. 639; *People* v. *Hagar*, 52 Cal. 179; *Younger* v. *Board*, 68 Cal. 243.)

V.   Assessments are not invalidated except for cogent reason. (*O'Neal* v. *Bridge Co.*, 79 Am. Dec. 669; *Stoddert* v. *Ward*, 100 Am. Dec. 84; *State* v. *W. U. Tel. Co.*, *supra*; *State* v. *D. L. S. & L. Co.*, 21 Nev. 86; *People* v. *Home Ins. Co.*, 29 Cal. 533.)

VI.   An assessment of a tax against a lot is not vitiated by an error in respect to the ownership thereof. (*City of St. Louis* v. *De Noue*, 8 Am. Law Reg. N. S. 383.)

VII   It is a universal principle that, where authority and jurisdiction is delegated to any public officer or tribunal over a subject matter, and its exercise is confined to his or her discretion, the acts so done are binding and valid as to the subject matter and parties. (Freeman on Judgments, vol. 1, sec. 249 and cases cited in note 5; *U. S.* v. *Arredendo*, 6 Pet. 729; *Waugh* v. *Chauncey*, 13 Cal. 12.)   The authority of the board of county commissioners in respect to matters of equalization of taxes is judicial, and its determination thereon is conclusive. It can only be set aside by competent authority, for one or all of the causes of defense authorized by the statute. (Comp. Laws, 1124; Freeman on Judgments, vol. 2. sec. 531; *State* v. *C. P. R. R. Co.*, 21 Nev. 178.)

VIII.   The board, by its order, directed the assessor to enter upon the roll the property listed in red ink, as well also the names of M. S. Eisner and Monitor Land and Live Stock Company. The property or persons thus entered had not been assessed, and, having information that they owned therein, *ex industria* included them in their order of direction,

shows a diligence in the discharge of a public duty which is commendable, to say the least, and is worthy of notice by other boards to which is confided this special jurisdiction. The decision of the board was, and is, final and conclusive, as before stated, and cannot, in view of the record, and the answer of defendants in particular, be gainsaid. All acts of the officers whose duty it was to attend such matters was clearly within the law. (2 Dillon's Mun. Corp. 825; *Gaines* v. *Thompson*, 7 Wall. 347; *U. S.* v. *Wright*, 11 Wall. 648; *Johnson* v. *Townsley*, 13 Wall. 72; Wells Res Adjudicata, 223, 341, 342; *Stanford* v. *Taylor*, 18 How. U. S. 409; *U. S.* v. *Flint*, 4 Saw. 43; Desty on Tax. 510; Bigelow on Estoppel, 4th ed. 66, 68; Herman on Estoppel, 519, 526; *Spaulding* v. *Home Assn.*, 87 Cal. 40; *Maxwell* v. *Board Comrs.*, 119 Ind 20; *Streib* v. *Cox*, 111 Ind. 299; *State* v. *C. P. R. R.*, 21 Nev. 179; *State* v. *V. & T. R. R.*, 23 Nev. 292; *State* v. *V. & T. R. R.*, 23 Nev. 436.)

IX. The authority of the board being established, a mere error, or any irregularity in its exercise, cannot make the decision void, nor subject it to collateral attack. (Freeman on Judg., vol. 1, 531; *Logansport* v. *Rose*, 99 Ind. 117; *Farmer's Bank* v. *Board*, 97 Cal. 327.)

X. The fact so strenuously claimed and so confidently relied upon by appellant, to wit: That the sheep were first assessed in Elko in April or May and were not assessed in Nye until the meeting of the board of equalization in September, "that he who is first in time is first in right," so to speak, and that the taxes were paid in Elko county, cannot avail appellant, and is not the law. For, as we have already shown, the sheep were in Nye at the date of the levy of the tax rate, *eo instanti* a lien attaches to the real estate, Pine Creek Ranch, and all the other lands in Nye, for payment of personal property tax.

XI. In *State* v. *Easterbrook*, *supra*, the court, Beatty, C. J., said: "The citizen could not avoid the payment of the tax by removing the property after the tax was levied. Respondent, however, claims that this property is to be held exempt, not because it was removed from the state before any levy was made, but before there was any assessment thereof. The revenue act requires the county assessors to make their

assessments between the second Monday in May and the second Monday of September in each year. But this, it appears to us, is wholly immaterial. The tax was levied prior to the 6th of April, when defendant left the state. From the moment of the levy there was a duty or obligation imposed on the owner of the property to pay a certain percentage of its value to the state for taxes. The removal of the property from the state before the value thereof was ascertained by the assessor might render it more difficult in some cases to ascertain the real value of the property, but could not release the owner from his legal liability to pay the tax when the amount thereof was once ascertained. We think that the property, having remained in the state after the first Monday in April, was clearly liable for both state and county taxes." Precisely the same contention made in this case, that the payment made in Elko county should defeat this action, though the property was in Nye at the date of levy.

XII. It is further contended that the board made the assessment; the facts of the case refute this contention. The board had no assessorial power, and therefore did not attempt to exercise any such power, but directed the assessor to assess and list on the roll the property. It simply directed the assessor to add to the roll, to assess the property which the board found had not been assessed. This the board was authorized to do.

*Trenmor Coffin*, for Appellants, in reply:

I. It was the duty of the assessor to make diligent inquiry and examination concerning all property in his county, and to seek for such information as it was necessary for him to have, in order to make a good and valid assessment, and not to ignore or disregard facts and information when given him by the owners of property, or their agents. (Comp. Laws, 1084.) In *Hearst* v. *Egglestone*, 55 Cal. 366-7, the owner of a mine and water ditch permitted his business to be carried on under the name of "The Blue Range Mining Company." This was not the name of the owner. The agent of the owner told the assessor to assess the property to "The Blue Range Mining Company." The court held the assessment void. The

court said: "Assessors should look to the statute for directions as to their duty, not to citizens."

II. The sheep in question were in Nye county at the beginning of the year 1897, but left the county early in March, and were assessed in Elko county at the end of April or the beginning of May of that year. They were the property of The Monitor Land and Live Stock Company. The live stock company owned no land in Nye county at Pine Creek, or elsewhere, until the end of August, 1897. The tax levy of Nye county was on January 5, 1897. How could a lien for the taxes on these sheep, which left Nye in March attach *eo instanti* on January 5th to lands which the live stock company did not own till the end of August?

By the Court, MASSEY, C. J.:

This is the statutory form of action to recover a judgment for taxes alleged to be delinquent in Nye county for the year 1897. The verdict of the jury and the judgment of the court were for the respondent. This appeal was taken from the judgment and from the order denying the motion for a new trial. A great number of errors have been assigned, but it is necessary to consider and determine one only, and that one presents the question of the validity of the action of the board of county commissioners of said county acting as a board of equalization, raised by the answer and proof.

It appears that the appellants Ernst & Esser, a copartnership, by George Ernst, a member thereof, returned in the year of 1897 a statement of the taxable property of said firm to the assessor of said county, upon which, and apparently other sources of information, the assessor made an assessment against that firm for that year, and carried the same upon the assessment roll.

On the 22d day of September, 1897, the board of equalization made an order to the effect that the Monitor Land and Live Stock Company, one of the appellants herein, a corporation organized and existing under the laws of the State of California, be added to the assessment list of Ernst & Esser, and directed the assessor to add to the assessment of Ernst & Esser and the said Monitor Land and Live Stock Com-

pany certain lands and personal property described therein, including 10,000 head of sheep at $1.50 per head, and certain other described land owned by one M. S. Eisner.

It appears from the assessment roll that the order was literally complied with. Prior to this action, but on the same day, it appears that witnesses were called before the board, sworn, and examined as to the ownership of the sheep, and it was shown by their testimony that said sheep were owned by the Monitor Land and Live Stock Company.

It further appears, and is not disputed, that the Monitor Land and Live Stock Company had no interest in, or claimed any in, the property included in the statement of Ernst & Esser, and assessed by the assessor to said firm.

It further appears that the Monitor Land and Live Stock Company was the sole and exclusive owner of the sheep, and that neither the firm of Ernst & Esser nor M. S. Eisner had or claimed any interest in said sheep, other than such interest George Ernst may have had in the same as one of the stockholders of said corporation. It is not claimed or pretended that either the firm of Ernst & Esser or the Monitor Land and Live Stock Company owned or claimed any interest in the land added to the assessment as the land of M. S. Eisner.

Under these facts the jury returned a verdict for the gross amount of the tax against all appellants, and judgment was rendered thereon accordingly. The appellants contend that the order of the board of equalization of September 22d is absolutely null and void, and, if this contention is tenable, then the order and judgment should be reversed.

The board of equalization in this state is a creature of the statute. It possesses only limited and special powers, and in the exercise of those powers its action must comply with the provision of the statute creating it. It can only exercise such powers as are expressly granted. (State v. Board of Washoe Co. Comrs., 5 Nev. 319; State v. Ormsby Co. Comrs., 6 Nev. 95; State v. Central Pac. R. Co., 9 Nev. 89; Id., 21 Nev. 270, 30 Pac. 693.)

It is made the duty of the county assessor by our statute to ascertain by a diligent inquiry and examination during a certain period of each year all real and personal property in

his county subject to taxation, to determine its true cash value, and list and assess the same to the person, firm, corporation, association, or company owning it, and in certain contingencies he may assess the same to unknown owners. (Comp. Laws, 1084.)

The assessor is also required to prepare a tax list or assessment roll containing certain matters, and, when so prepared, and verified by his oath, he is required to turn the same over ·to the clerk of the board of county commissioners for the subsequent action of said board sitting as a board of equalization.   (Comp. Laws, 1093, 1095, 1096.)

A subsequent section specifically defines the powers of the board of equalization. It declares that: "The board shall have power to determine the valuation of any property assessed and may change and correct any valuation either by adding thereto or deducting therefrom such sum as shall be necessary to make it conform to the actual cash value of the property assessed, whether said valuation was fixed by the owner or assessor, except that in case where the person complaining of the assessment has refused to give the assessor his list under oath, as required by this act, no reduction shall be made by the board in the assessment made by the assessor.   *   *   *   The recorder of the county shall be also present and attend on the board with an abstract of all unsatisfied mortgages and liens remaining on record in his office, arranged in alphabetical order, for which service he shall receive no compensation, and the board of equalization shall make use of such abstract and all other information that they can procure from the recorder in the recorder's office, or otherwise, in equalizing the assessment roll of the county, and may require the assessor to enter upon such assessment roll any mortgage or lien, or other property which has not been assessed, and the assessment and equalization so made shall have the same force and effect as if made by the assessor before the delivery of the assessment roll by him to the clerk of the board of county commissioners.   *   *   *"  (Comp. Laws, 1098.)

Two powers are conferred upon the board by the provisions of this section:   First, it is authorized to determine the true cash value of the property upon the tax roll as made by the

assessor; second, to require the assessor "to enter upon such assessment roll property which has not been assessed." It can make but two changes in the roll as prepared by the assessor—change the valuation, and the necessary change required by the entry of property not assessed. The language used is plain and clear. No authority is given to the board of equalization, either expressly or impliedly, to add the name of the Monitor Land and Live Stock Company to the assessment of Ernst & Esser, and thereby create a liability, as in this case, against the company, for property properly assessed in its owner's name, where the person whose name has been added by the order makes no pretense to the ownership of the property. It was, in effect, an assessment by the board of equalization of the Monitor Land and Live Stock Company for the property of Ernst & Esser.

It is neither pretended nor claimed that the Monitor Land and Live Stock Company ever owned or claimed any right, title, or interest in or to the property included in the statement of Ernst & Esser for the year 1897; yet the order of the board, the verdict of the jury, and the judgment rendered thereon fix a liability upon the company for the taxes upon the said property.

Again, the board, by its order, directed the assessor to add to the assessment of Ernst & Esser and the Monitor Land and Live Stock Company certain real and personal property, including the 10,000 head of sheep.

It does not appear that the company was assessed, except by the void action of the board, above referred to. The board had the evidence before it that Ernst & Esser did not own the sheep; yet the order, the verdict of the jury, and the judgment rendered thereon fixed a liability upon Ernst & Esser for the taxes upon the property of the company, which could not have been properly assessed to them by the assessor.

If it can be claimed that under the last clause of Section 1098, quoted and cited above, the board of equalization possesses the power to assess property which has not been assessed by the county assessor, it does not necessarily follow that it has the power to assess it to a person who is shown not to be the owner before such assessment is made, and thereby create any personal liability for the taxes thereon.

The fallacy of any such assumption is illustrated by the order of the board of equalization, by which it arbitrarily directed the assessor to add to the amended assessment list of Ernst & Esser and the Monitor Land and Live Stock Company certain "lands owned by M. S. Eisner."

If this method of procedure is upheld, then can the burdens of taxation be made unequal, and persons and property can be held for taxes which are neither in law nor equity a charge against either.

It is made the duty of the assessor to assess all property to the person, firm, etc., owning it, except in a certain contingency, when he may assess it to unknown owners.

It has been held by the courts of other states under similar provisions that property must be assessed to the true owner, if known, otherwise the assessment is void; and this court has intimated that such is the rule of our statute. (*State* v. *Central Pac. R. Co.*, 21 Nev. 256, 30 Pac. 686; *Reese* v. *Sherrer*, 49 N. J. Law, 610; *Kelsey* v. *Abbott*, 13 Cal. 609; *Blatner* v. *Davis*, 32 Cal. 328; *People* v. *White*, 47 Cal. 617; *Grotefend* v. *Ultz*, 53 Cal. 666; *Hearst* v. *Egglestone*, 55 Cal. 365; *Bosworth* v. *Webster*, 64 Cal. 1, 27 Pac. 786; *Grimm* v. *O'Connell*, 54 Cal. 522; *Crawford* v. *Schmidt*, 47 Cal. 617; *Brady* v. *Dowden*, 59 Cal. 51; 25 Am. & Eng. Enc. Law, 213, 214.)

It therefore seems clear to us that the board of equalization exceeded its power in making the order of September 22, 1897, and that its action in the premises is absolutely void. It appears from the record that the appellants Ernst & Esser have tendered (and kept good their tender) the amount of taxes due upon the property assessed to them, and that a retrial of the case will not be necessary. We have, therefore, not determined the many other questions argued and submitted, deeming it unnecessary so to do.

For the reasons given, the judgment and order appealed from will be reversed.

BELKNAP, J.:  I concur.

FITZGERALD, J., being disqualified, did not participate.